J. C. WILBURN et ux. v. EDITH WILBURN KINGSLEY et al.

AND .

ELLEN WILBURN v. J. C. WILBURN et al.

Eastern Section.　March 13, 1926.

Petition for Writ of Certiorari denied by Supreme Court June 24, 1926.

1. **Deeds. Sufficiency of description of property.**
　　In an action to try title and partition real estate the description in the deed taken with other evidence in case held to describe and convey tract of land in controversy.

2. **Adverse possession. Actual adverse possession under parol sale does not give title which can be conveyed by deed.**
　　In an action to try title and partition real estate where parties had gone into possession of land under parole sale, held that they did not have a title that they could convey by deed, and this notwithstanding they had been in possession for seven years under parol sale.

3. **Deeds. After-acquired title held passed by deed.**
　　Where parties had bought land by parol and entered into possession and then attempted to convey it by deed, held that deed conveyed title later acquired by grantors.

4. **Husband and wife. After-acquired title. In Tennessee wife estopped from setting up after-acquired title.**

Although the general rule is to the contrary, in Tennessee a wife who joins with her husband in conveying land is estopped from later setting up after-acquired title and all after-acquired titles pass under the deed.

5. **Life estates. Evidence held not to create a life estate.**

In an action to try title where deed did not reserve a life estate and the parties had later transferred the property without mentioning a life estate, held none created, notwithstanding some evidence of intent to do so.

6. **Improvements. Measure of amount recoverable for improvements.**

Ordinarily the amount that can be recovered for improvements is the amount the improvements enhance the value of the land and not the actual cost of improvements.

7. **Partition. In partition cases court has broad power to do equity.**

In partition cases a court of equity does not act as a mere ministerial agent, but recurs to its own peculiar and flexible power of administering its relief, ex aequo et bono, according to the rules of right and its own notion of general justice between the parties.

8. **Improvements. In partition cases court not bound by general rule in regard to amount recoverable for improvements.**

In an action to partition land and recover for improvements placed thereon, held in partition suit the court has power to allow amount of actual cost of improvement notwithstanding the value of the land was not enhanced to that amount.

Appeal from Chancery Court, Greene County; Hon. Hal. H. Haynes, Judge.

Modified and affirmed.

J. C. Wilburn, of Knoxville, and Dana Harmon, of Greeneville, for Ellen Wilburn and others.

J. E. Biddle, of Greeneville, for Edith Wilburn Kingsley and guardian ad litem, for minor defendants.

J. Alvin Johnson, of Knoxville, for Mechanic's Bank & Trust Co., and Lavina M. Jones.

THOMPSON, J.  Mr. C. C. Wilburn and wife, Ellen Wilburn, for a great many years lived on a farm in the 19th Civil District of Greene county, Tennessee, which farm was supposed to contain about seventy-five acres, but in fact only contains about fifty-two. They had seven children, i. e., E. U. Wilburn, J. C. Wilburn, Pearl Wilburn, Tonie Wilburn, Sam Wilburn, Edith Wilburn and Edgar Wilburn.

Pearl Wilburn married R. M. Kingsley, and there were born of this marriage five children, i. e., George Kingsley, Ellen Kingsley, Sam Kingsley, Lucile Kingsley and Pearl Kingsley, all of whom are still minors. Then Mrs. Kingsley died, and Mr. Kingsley married her younger sister, Edith Wilburn, but no children were born of this marriage.

All of these people are living except the first Mrs. R. M. Kingsley, and her father, Mr. C. C. Wilburn, both of whom died prior to the institution of this suit.

On January 10, 1922, Mr. J. C. Wilburn, his wife joining with him, filed this bill against Edith Wilburn Kingsley and her husband, R. M. Kingsley, Mr. Kingsley's above-named five minor children by his first wife, Walter McCoy, Trustee, Mechanic's Bank & Trust Company, and Lavina M. Jones.

The bill alleged that on February 9, 1901, complainant's father and mother, C. C. Wilburn and wife, Ellen Wilburn, had conveyed their farm, which as stated was in the 19th Civil District of Greene county, to their seven children. A description by metes and bounds of the farm was set out. It then alleged that four of the children (complainant's brothers) had conveyed their interests to complainant and that he, therefore, was the owner of an undivided five-sevenths interest in the farm. That complainant's sister, Mrs. Edith Wilburn Kingsley, wife of R. M. Kingsley, was the owner of an undivided one-seventh interest, and that the five minor children of Mr. R. M. Kingsley by his first wife Pearl Wilburn Kingsley, were the owners of the other undivided one-seventh interest, each owning an undivided one-thirty-fifth interest.

The bill then alleged that in 1916, complainant executed to Walter McCoy, Trustee, a deed of trust upon the farm conveying complainant's interest therein to secure the payment of a $3,000 note, and that there is now due upon said note to the Mechanic's Bank & Trust Company, the true and lawful holder and owner thereof, a balance of $2,390, with interest from September 1, 1921. That on March 23, 1920, complainant executed to J. R. Jones, Trustee, a second trust deed upon the farm conveying complainant's interest therein to secure to said J. R. Jones the payment of a $3,000 note, which with interest is entirely unpaid. That Mr. Jones had died leaving a will devising and bequeathing all of his property, including the note, to his widow, Mrs. Lavina M. Jones, who is now the true and lawful holder and owner of said note.

The bill further alleges that in 1914 complainant, at a cost of $2,000, built a house upon said farm for his father and mother, C. C. Wilburn and Mrs. Ellen Wilburn, to live in. That he built said house, which he otherwise would not have done, under an agreement with his brothers and sisters that they would convey their interests in the farm to him. That his four brothers had lived up to their agreement and had conveyed their interests to him, but that his two sisters, Pearl Wilburn Kingsley, deceased, and Edith Wilburn Kingsley, had failed, declined and refused to live up to their agreements and convey their interests to him. That in addition to his five-sevenths interest in the farm, complainant is, therefore, entitled out

of said farm to the sum of $2,000, with interest from 1914, or to the present value of said house which is more than $2,000.

Finally it was alleged that said farm is worth approximately $5,000, but is so situated that it cannot be equitably partitioned in kind, and that it would be manifestly to the advantage of the parties that it be sold for partition instead of partitioned in kind.

The prayer of the bill was that the rights, titles and interests of the parties be decreed; that the farm be sold; that sufficient of the proceeds of the sale belonging to complainant after the payment of the costs adjudged against him be applied to the payment of the notes in favor of the Mechanic's Bank & Trust Company and Mrs. Lavina M. Jones; that the proceeds of the sale be applied in payment of the other costs of the cause, including a reasonable fee to complainant's attorney; and that the balance of the proceeds of the sale be divided among the parties in accordance with their respective rights and interests.

The defendants all answered the bill, the Mechanic's Bank & Trust Company and Mrs. Lavina M. Jones filing their answers as crossbills to foreclose the mortgages, etc., and Mrs. Kingsley and her husband denying that she or her sister had agreed to convey their interests to complainant and that he was entitled to anything on account of having built the house. Mr. and Mrs. Kingsley also denied that the farm could not be partitioned in kind, or that it would be manifestly to the advantage of all parties that the farm be sold for partition, etc. They asserted that the two-sevenths interest of Mrs. Kingsley and the minor children of Mr. Kingsley by his first wife could be set apart to them in one tract and that it would be to the best interests of Mrs. Kingsley and the said children to have this done.

Proof was taken on an order of reference, and such proceedings were had that on October 9, 1922, a final decree was entered as follows:

That complainant, J. C. Wilburn was the owner of a five-sevenths interest; that Mrs. Edith Wilburn Kingsley was the owner of a one-seventh interest, and that the five minor children of Mr. Kingsley by his first wife, Pearl Wilburn Kingsley, deceased, were the owners of a one-seventh interest, or one-thirty-fifth interest each. That the farm was worth $5,000; that it could not be equitably partitioned in kind; and that it would be manifestly to the advantage of all parties to have it sold for partition or division. That the five-sevenths interest of J. C. Wilburn was incumbered by the two deeds of trust, one in favor of the Mechanic's Bank & Trust Company securing a balance of $2,390, and interest, and the other in favor of Mrs. Lavina M. Jones securing an indebtedness of $3,000, and interest. The decree then reserved the question of complainant's rights growing out of the building of the house, and ordered the clerk and master to sell

the farm (for division of the proceeds) free from all mortgages, in bar of the equity of redemption, upon a credit of six and twelve months, taking from the purchaser notes with good personal sureties, etc., and retaining a lien, etc. All other questions were reserved.

The clerk and master sold the property and reported his action to the court, but before the sale could be confirmed, Mrs. Ellen Wilburn, widow of C. C. Wilburn, deceased, and mother of the complainant, J. C. Wilburn, filed a bill (in the same court) against complainant J. C. Wilburn, and also against Edith Wilburn Kingsley, the five minor children of Mr. R. M. Kingsley by his first wife, and W. A. Stephens, purchaser at the court sale, to enjoin all of them from taking any other or further steps looking to a confirmation of said sale, etc. In this bill she alleged that she was the owner of a life estate in the farm, was in actual and adverse possession of the same, and had been for approximately forty years, that she was not a party to the original partition suit and was not bound by it, and that if the sale was confirmed, etc., it would interfere with her possession of the farm, and would becloud or incumber her life estate therein.

Edith Wilburn Kingsley filed an answer, which the guardian ad litem of the minor children adopted as their answer, denying that Mrs. Ellen Wilburn was the owner of a life estate or interest in the farm, or that she had any interest whatever therein. The answer admitted that Mrs. Ellen Wilburn had been and still was living on the farm, but alleged that she had been and still was doing so by permission of her children to whom she and her husband, C. C. Wilburn had conveyed it on February 9, 1901, with no reservation of a life estate in her.

The Mechanic's Bank & Trust Company and Mrs. Lavina M. Jones, though not parties defendant to the bill, were permitted to file answers denying that Mrs. Ellen Wilburn had any interest in the farm, and cross-bills to foreclose their mortgages, etc.; to which cross-bills Mrs. Ellen Wilburn filed answers joining issue thereon, etc.

What, if any, answer Mr. J. C. Wilburn filed does not appear, but on July 14, 1923, the two causes were consolidated and considerable proof was taken and filed.

On December 15, 1923, Ellen Wilburn filed an amended bill alleging as an additional ground or reason why the sale should not be confirmed, etc., that on February 9, 1901, when she and her husband, C. C. Wilburn, conveyed the farm to their children, they had not yet acquired the title to twenty-two acres of it, and that John A. Wilburn and wife did not convey this twenty-two acres to her and her husband, C. C. Wilburn, until April 27, 1903, on which date they conveyed the twenty-two acres to her and her husband, C. C. Wilburn, as tenants by the entirety. She therefore alleged that the title

and ownership of the twenty-two acres did not pass to her children under the deed which she and her husband executed to them on February 9, 1901, and that as she and her husband owned the twenty-two acres as tenants by the entirety, the entire estate and interest therein became hers at his death, and that she was the sole owner of it.

Mrs. Edith Wilburn Kingsley, the guardian ad litem of the minor children, the Mechanic's Bank & Trust Company, and Mrs. Lavina M. Jones all filed answers to this amended bill and set up in substance and effect the following:

That while John A. Wilburn and wife did not execute the deed to the twenty-two acres to C. C. Wilburn and wife, Ellen Wilburn until April 27, 1903, yet nevertheless the trade, which was simply an exchange of lands, had been made and consummated and C. C. Wilburn and wife, Ellen Wilburn, had taken possession of the twenty-two acres, long prior to February 9, 1901, and were the actual owners of it at that time, and that therefore the title to the twenty-two acres passed to the children under the deed of February 9, 1901. But that if mistaken in this, then that since the deed of February 9, 1901, included the twenty-two acres in its description, purported to convey the entire farm including the twenty-two acres, and was a general warranty deed, the after-acquired title under the deed of April 27, 1903, immediately passed to, inured to the benefit of, and vested in, the children.

These answers of the Mechanic's Bank & Trust Company and Mrs. Lavina M. Jones were of course also filed as cross-bills to foreclose the mortgages, etc.

More proof was taken and filed and on March 23, 1925, a final decree was entered, the material parts of which were as follows:

That W. A. Stephens the purchaser at the court sale be relieved from his bid on account of the long delay caused by the bills filed by Mrs. Ellen Wilburn. That Mrs. Ellen Wilburn neither owned the twenty-two acres, nor a life interest in the farm. That Mrs. Edith Wilburn Kingsley was the owner of a one-seventh interest. That the five minor children of R. M. Kingsley by his wife, Pearl Wilburn Kingsley, were the owners of a one-seventh interest, i. e., a one-thirty-fifth interest each. That J. C. Wilburn was the owner of a five-sevenths interest, subject however to the lien of the two deeds of trust. That the clerk and master again advertise and sell the farm as directed in the decree in the original partition case. That the proceeds (after deducting costs) be divided into two parts, i. e., five-sevenths to J. C. Wilburn's share, and the two-sevenths to the shares of Mrs. Edith Wilburn Kingsley and the five minor children. But that two-sevenths of $1500 be deducted from the two-sevenths share of Mrs. Kingsley and the five children, and be added to the

five-sevenths share of J. C. Wilburn. This, on account of his having built the improvements or house in 1914. That the Mechanic's Bank & Trust Company have and recover from J. C. Wilburn on its note secured by its deed of trust the sum of $2,390, wi'h six per cent interest from September 1, 1921, which recovery is a first lien against the amount of the proceeds of the sale going to J. C. Wilburn. That Mrs. Lavina M. Jones have and recover from J. C. Wilburn on her note secured by her deed of trust the sum of $3,000, with interest from March 23, 1920, and an attorney's fee of ten per cent (calculated on both principal and interest) which recovery is a lien upon the proceeds going to J. C. Wilburn after the satisfaction of said prior claim of the Mechanic's Bank & Trust Company.

It should have been stated that the record showed that after the execution and registration of the two trust deeds, J. C. Wilburn executed and delivered to his mother, Mrs. Ellen Wilburn, a deed conveying to her a life estate in his interest in the farm. Also that Mrs. Ellen Wilburn had offered certain evidence to the effect that in the execution of the deed of February 9, 1901, from her and her husband, C. C. Wilburn, to their children, the parties intended and understood that a life estate was being reserved to her, and that this evidence had been objected to upon the ground that it was incompetent and sought to contradict the deed.

The decree sustained the objections and excluded this evidence, and stated that while Mrs. Ellen Wilburn would have, under his deed to her, a life interest in the share of the proceeds of the sale going to J. C. Wilburn, yet same is necessarily subject to the deeds of trust, which apparently consume his part of the proceeds because Mr. Stephens, the successful bidder at the previous sale, had only bid about $6,000 for the farm.

Mrs. Ellen Wilburn has perfected a broad appeal to this court and has assigned errors, and Mr. J. C. Wilburn has perfected an appeal to this court from so much of the decree as allowed only the sum of $1,500 on account of the building of the house and has assigned error.

Mrs. Wilburn's first assignment of error is based on the exclusion of the evidence above mentioned. Her second assignment is:

"2nd: The Chancellor erred in dismissing the bill of Ellen Wilburn and allowing her no relief thereunder. The Chancellor should have decreed that Ellen Wilburn was the owner of a life estate in the premises sought to be sold in these proceedings."

Her third and last assignment is:

"3rd: The Chancellor erred in not decreeing that Ellen Wilburn was the owner in fee of the 22-acre tract of land described as follows:" (Then followed a description of the 22 acres which we have omitted from the quotation.)

Mr. J. C. Wilburn's single assignment of error is that the Chancellor "should have allowed the sum expended for said improvements, with interest, which was shown to be more than $2,000 expended in 1914. In any event the Chancellor should have allowed the reasonable value of said improvements, which in no event was less than $2,500.."

Instead of dealing with the assignments of error in the order in which we have stated them, we will deal with the questions presented and in the order of their importance.

The first and most important question is whether Mrs. Ellen Wilburn still owns the twenty-two acres, or whether the same was transmitted to her children. On this question the decree of the Chancellor is as follows:

"2. If said deed (of February 9, 1901, from C. C. Wilburn and wife, Ellen Wilburn, to their children) did not convey the property (the twenty-two acres), title to which was afterwards acquired, of course the vendor's covenants would be no stronger than the description in their deed; and would not, therefore, operate to put said title in the vendees. But although the description in the deed is somewhat meager it appears that the vendors had already bargained for, and were in possession of said 22-acre tract of land and the description in the deed cannot be made to fit, if said tract is excluded. So that from the way the parties have interpreted the deed and in the light too of the purpose of making it, which seems to have been to place the property beyond the reach of creditors, and considering the language of the deed, together with competent evidence explaining its calls, this court is unable to escape the conclusion that it was intended to and does in fact cover the said 22-acre tract of land."

We think the above finding of the Chancellor is correct, for the following reasons:

The material portions of the deed of February 9, 1901, from C. C. Wilburn and wife, Ellen Wilburn, to their children, are as follows:

"We, C. C. Wilburn and Ellen Wilburn, in consideration of the sum of $1,500, dollars to us in hand paid, do hereby sell and convey in fee simple to (naming the seven children) our lawful heirs the following tract or parcel of land, it being in Greene county, Tennessee, Dist. No. 19, adjoining the lands of Jno. Wilburn, R. L. Rader, Ailshie heirs and others, said to contain 75 acres, more or less." It was, as stated, a general warranty deed.

That this deed covered and was intended to cover the 22 acres, as well as the balance of the farm, is shown by the following.

The deed stated that the tract conveyed was said to contain 75 acres, more or less. The survey made during the progress of this cause shows that the entire farm, including the 22 acres, actually

contains only 52 acres; and it is less likely that the parties, in stating the acreage contained in the deed, made a mistake of 45 acres, than it is that they made a mistake of only 23 acres. Therefore, the probabilities are that it was intended to include the 22 acres in the deed.

The deed, in describing the land conveyed, stated that it adjoined the lands of R. L. Rader, and the overwhelming weight of the testimony is that the 22 acres is the only part of the farm which adjoined the lands of R. L. Rader, and as stated by the Chancellor, the description did not fit unless the 22 acres were included.

Prior to the execution of the deed on February 9, 1901, C. C. Wilburn and wife, Mrs. Ellen Wilburn, had traded with Jno. Wilburn and wife, for the 22 acres, the trade being an exchange of land. Mr. C. C. Wilburn and Mr. Jno. Wilburn were brothers and Mr. C. C. Wilburn and wife went into actual possession of the 22 acres prior to February 9, 1901, and were in possession of it on that date when they executed the deed. Moreover, while the deed from Jno. Wilburn and wife conveying the 22 acres to C. C. Wilburn and wife was not executed until after the deed from C. C. Wilburn and wife to their children, yet the last-mentioned deed was not recorded until the day after the first-mentioned deed was recorded.

The deed recites a consideration of $1,500, cash in hand paid, but nothing was in fact paid. The record shows that at the time the deed was executed, Mr. C. C. Wilburn was to some extent financially involved, and that Mrs. Ellen Wilburn was afraid that if he continued to own the farm he would make some improvident trade of it, and therefore wanted him to join with her in conveying it to their children for the protection of the entire family. This was done, and C. C. Wilburn lived on the farm until his death, and Ellen Wilburn still lives on it, by permission, of the children, though the house is not located on the 22 acres.

That the children of C. C. Wilburn and Ellen Wilburn understood that the deed to them included and covered the 22 acres, as well as the balance of the farm, is shown by the fact that the deed from J. C. Wilburn's brothers conveying their interests to him, used descriptions by metes and bounds which beyond question included the 22 acres. In fact, none of the children even discovered that the deed from Jno. Wilburn and wife to C. C. Wilburn and Ellen Wilburn was not executed until after the deed from C. C. Wilburn and Ellen Wilburn to them was executed, until during the progress of these consolidated causes when one of them in going over the records noticed it and caused the amended bill to be filed setting up the ownership of the 22 acres by Mrs. Ellen Wilburn. Prior to that discovery all the Wilburns considered that the title to the 22 acres passed to the children under the deed of February 9, 1901.

For the foregoing reasons, and others of similar probative value, we think the Chancellor was correct in holding that the description in the deed of February 9, 1901, covered and included the 22 acres, as well as the balance of the farm.

But on that date the deed from Jno. Wilburn and wife to C. C. Wilburn and Ellen Wilburn had not been executed, and the questions are: 1st, C. C. Wilburn and wife, Ellen Wilburn, having already traded with Jno. Wilburn and wife for the 22 acres, and having already gone into adverse possession of it at the time they executed the deed to their children, thus being parol vendees in actual adverse possession, did they have such a title to and ownership of the 22 acres as they could then actually pass to the children by the deed of February 9, 1901, notwithstanding the fact that the deed from Jno. Wilburn and wife to C. C. Wilburn and Ellen Wilburn had not been executed? 2nd, If not, did the after-acquired title of C. C. Wilburn and Ellen Wilburn under the deed to them from Jno. Wilburn and wife, passed to, inure to the benefit of, and vest in, the children by virtue of the general warranty contained in the deed of February 9, 1901, notwithstanding the fact that Mrs. Ellen Wilburn was living with her husband and under the disability of coverture at the time of the execution of both deeds?

As to the first question: It is true that in Choate v. Sewell, 15 Thompson, 487, the Supreme Court held that a parol sale is only voidable and not void, and that under Shannon's Code, section 4458, seven years adverse possession by a parol vendee cuts off the right of the parol vendor to repudiate the sale and recover possession of the land; but as stated in our opinion in the case of R. C. Gaylor v. W. R. Gaylor et al., No. 1, Anderson County Equity, we do not believe that it either passes a title upon which an ejectment suit can be maintained, or cuts off the right of the parol vendor to set up the statute of frauds as a defense to a suit by the parol vendee to compel a specific performance of the parol sale by the execution to him of a deed. Therefore, even if C. C. Wilburn and Ellen Wilburn at the time they executed the deed to their children had already had seven years adverse possession under the parol sale, they nevertheless, and until they themselves received a deed, would not have had a title which they could convey to their children, and which one of the children, J. C. Wilburn, could convey to the trustees in the deeds of trust, so as to enable said trustees, or the beneficiaries of the trusts, to disturb Mrs. Ellen Wilburn in her physical possession which she still has by permission of her children.

As to the second question: We think the after-acquired title did pass to, inure to the benefit of, and vest in, the children, notwithstanding the fact that Mrs. Ellen Wilburn was living with her husband and under the disability of coverture. An exceedingly skillful

brief on this question has been filed in behalf of Mrs. Ellen Wil-burn. But we think the question was long ago settled, and decided against her contention, by the Supreme Court, as will be shown by a reading, in the order in which we cite them, of the following cases: Henderson v. Overton, 2 Yeager, 394; Robertson v. Gaines, 2 Humph., 367; Gookin v. Graham, 5 Humph., 479; Fletcher v. Coleman, 2 Head, 384; Susong v. Williams, 1 Heisk., 625; Moseby v. Partee, 5 Heisk., 37.

Of the above cases, Fletcher v. Coleman, and Moseby v. Partee, are the most important. And the case of Mount v. Kesterson, 6 Caldw., 452, to some extent restates and affirms the history of the law as given in Moseby v. Partee, and upon which it was decided.

As stated, we think the Supreme Court has, for reasons peculiar to Tennessee, already and long ago settled the question contrary to Mrs. Ellen Wilburn's contention, and the compilers of Corpus Juris also seem to have thought so. In 30 C. J., pages 774 and 775 in section 401½ under the heading of Husband and Wife, it is said:

"After-Acquired Title. Under the general rule as to estoppel of married women by covenants in deeds, it is generally held, in the absence of statutes affecting the case, that a married woman is not estopped by covenants in her deed from setting up an after-acquired title, but there is some authority to the contrary."

The "authority to the contrary" is in footnote 75 at the lower left-hand corner of page 775, where Fletcher v. Coleman, supra, among other cases, is cited.

We might add that the fact that the children paid nothing to their father and mother, C. C. Wilburn and Ellen Wilburn, for the farm has no bearing on the question. Susong v. Williams, supra.

We might add also that in our opinion the position taken in the reply brief in behalf of Mrs. Ellen Wilburn that the deed of February 9, 1901, was invalid because it was not properly acknowledged and certified, in that the certificate of acknowledgment does not show that the officer was personally acquainted with Mrs. Ellen Wilburn, is without merit. In the first place, it was not raised and acted upon in the court below. In the next place, C. C. Wilburn and wife, Mrs. Ellen Wilburn (tenants by the entirety), executed the deed in accordance with Shannon's Code, sections 3753-3755, and it was not necessary for the certificate to state that the officer was personally acquainted with Mrs. Ellen Wilburn. Mount v. Kesterson, 6 Caldw., 452; Bell v. Lyle, 10 Lea, 44; and Jefferson County Bank v. W. T. Hale & Wife et al. (Jefferson County Equity Cause, opinion filed for publication on February 15, 1922 by Mr. Justice Cook).

For the foregoing reasons, we do not think the Chancellor was in error in finding and holding that the after-acquired title passed to the children, and that Mrs. Ellen Wilburn is not the owner in fee

of the 22 acres. Her third assignment of error is therefore over-ruled.

The next question is as to the correctness of the holding of the Chancellor that Mrs. Ellen Wilburn does not own a life estate in the farm. On this question the Chancellor found simply that: "The insistence of complainant, Mrs. Ellen Wilburn, that she has a life estate in the property involved is not sustained by the record." We fully agree with the Chancellor.

Mrs. Ellen Wilburn did testify that it was the intention to reserve a life estate to her, that her husband and the draftsman of the deed told her that a life estate was being reserved to her, and that she thought that it was, etc. Mr. J. C. Wilburn, in his testimony, seeks to corroborate her, as does E. U. Wilburn. But Mrs. Edith Wilburn Kingsley contradicts them.

The deed certainly does not reserve a life estate to her, and long after it was executed the four brothers of J. C. Wilburn conveyed their interests in the farm to him without making any mention of a life estate having been reserved to her. Moreover, J. C. Wilburn filed his original bill in this cause, not only not mentioning any reservation of a life estate to his mother, or any intention of doing so having ever existed, but expressly alleging that he was the owner of a five-sevenths interest in the farm, that Mrs. Edith Wilburn Kingsley was the owner of a one-seventh interest, and that the minor children of R. M. Kingsley by his first wife were the owners of a one-seventh interest, i. e., a one-thirty-fifth interest each. He did not even make Mrs. Ellen Wilburn a party defendant to his bill, as he would have done had he considered that she had any interests in the farm.

As evidence tending to corroborate her testimony that it had always been the intention of the children that she have and own a life estate in the farm, Mr. J. C. Wilburn introduced a deed in which he conveyed a life estate to her. This deed appears to have been executed and acknowledged on September 2, 1913, and Mr. J. C. Wilburn testified that he delivered it to her very shortly after he executed it. But she testified that he did not deliver it to her until the spring of 1923, and it was not recorded until April 3, 1923, which was less than a month before she filed her injunction bill in this cause. He says he executed this deed because he had promised his brothers and sisters to do so in consideration of their conveying their interests to him, and in order that his mother might have a home in which to live. We think a desire to furnish her a home prompted this deed; not any recognition of any previous reservation of a life estate having been made to her.

It is our opinion that the record as a whole clearly and overwhelmingly refutes the evidence of Mrs. Ellen Wilburn; whereas, the burden was on her to show by the most clear and convincing evidence

that she was entitled to a life estate.  Montgomery v. Hobson, Meigs, 437; Grotenkemper v. Carver, 9 Lea, 286; Hardison v. Bellington, 14 Lea, 350; Gates v. Card, 9 Pickle, 341; Insurance Co. v. Shoemaker, 11 Pickle, 81; Ronner v. Welcker, 15 Pickle, 627.

And lapse of time is itself a circumstance weakening her evidence. Kirk v. Burkholtz, 3 Tenn. Chy., 423; Montgomery v. Hobson, supra; Ronner v. Welcker, supra.

The Chancellor excluded some of her testimony and we think correctly, but even considering it as competent, we are nevertheless of opinion that she has entirely failed in carrying the burden necessary to establish a life estate in her.  Her first and second assignments of error are therefore, overruled.

This brings us to the assignment of error on behalf of Mr. J. C. Wilburn.  He insists and testifies that he built the house, at a cost of $2,000, in the year 1914, for his father and mother to live in, under an express understanding, not only with his four brothers, but also with his two sisters, that if he would build the house they would all convey their interests in the farm to him.  But the proof shows that he paid all of his four brothers substantial sums of money for their interests, and one of these brothers, E. C. Wilburn, did not execute a deed to him until November 13, 1915, long after the completion of the house, and Mr. J. C. Wilburn admitted that he paid this brother $350, at the time, and cancelled an indebtedness of $500, for his interest.

Mrs. Edith Wilburn Kingsley and her husband R. M. Kingsley denied that either Pearl Wilburn Kingsley, in her lifetime, or Edith Wilburn Kingsley, ever promised or agreed to convey their interests to him, and we think the weight or preponderance of the evidence is against his contention that they did.

But we do think that they both actively consented and encouraged him to build the house and Edith Wilburn Kingsley lived in it until her marriage, a period of several years.  The record also shows that Mr. J. C. Wilburn has done more for his father and mother than any of their other children, and that he has always been very kind and generous with his father and mother, so much so that it is quite apparent from the record that his mother has taken his side of this entire controversy, which we think is really between him and the holders of the notes, and him and his sister; rather than between his mother and the holders of the notes, and his mother and his sister.

Under these circumstances, we do not think he should be limited to the $1,500, which the Chancellor evidently considered to be the amount by which the house enhances the present value of the farm. The estimates of the witnesses varied as to how much this enhancement is, and we cannot say, on account of the unfortunate location of the house, that we think it is more than $1,500, but we nevertheless

think the sum of $2,000, which it cost him to build the house, should have been allowed.

Such cases as Herring v. Pollard, 4 Humph., 363; Mathews v. Davis, 6 Humph., 324; Alston v. Boyd, 6 Humph., 505; Humphreys v. Holtsinger, 3 Sneed, 228; and Rhea v. Allison, 3 Head, 177, do hold that a parol vendee who places improvements on the land is limited to the amount by which the improvements enhance the value of the land, and cannot recover the full amount spent in making the improvements where that amount exceeds the enhancement.

But J. C. Wilburn, we think, stands in a better attitude on this record than a mere parol vendee, and this case being a partition suit (insofar as this question is concerned), we think it should be governed by the principles laid down in Broyles v. Waddell, 11 Heisk., 32; Reeves v. Reeves, 11 Heisk., 669; Tyner v. Farmer, 4 Lea, 469; Simpson v. Sparkman, 12 Lea, 360; and Pope v. Gunther, 23 Pickle, 16. In the first of these cases the Supreme Court said:

"The facts of this case are peculiar. We have no case precisely like it, and it must rest upon the general principle that in such cases (partition cases) a court of equity does not act as a mere ministerial agent, but recurs to its own peculiar and flexible powers of administering its relief ex aequo et bono—according to the rules of right and its own notion of general justice between the parties."

Thus having the right to exercise discretion in the matter, rather than to follow an arbitrary rule, we have reached the conclusion that under the peculiar facts of this case the Chancellor should have allowed $2,000, the amount it cost to build the house, instead of only $1,500. But we do not think that any interest on the $2,000, should be allowed.

With this single modification, the decree of the Chancellor will be affirmed, and the cause remanded to the lower court for the purpose of carrying its decree, as modified, into effect. The costs of the appeal will be taxed against J. C. Wilburn and Mrs. Ellen Wilburn, as principals, and the United States Fidelity & Guaranty Company as surety, on the appeal bond.

Snodgrass and Portrum, JJ., concur.