IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 1, 2018

## JANELLA L. MCCANTS v. JACINTA L. MCGAVOCK, ET AL.

**Appeal from the Chancery Court for Hamilton County**
**No. 15-0286  Pamela A Fleenor, Chancellor**

———————————————————————

**No. E2017-01712-COA-R3-CV**

———————————————————————

This appeal involves a partition of jointly owned property. The trial court held that the plaintiff, the sole residing tenant, excluded the defendants, the three other cotenants, from the property owned by all four parties after relations deteriorated and a mutually agreed upon final disposition of the property could not be reached.  The trial court further awarded $60,000, the amount of "repairs/improvements," to plaintiff as reimbursement and compensation.  Additionally, the trial court held that "ouster" was established and that the plaintiff excluded her cotenants and must pay rent to the cotenants for the use and occupation of the property.  The trial court's ruling included an order of partition of the property, that the defendants' share of the amount expended by the plaintiff will be deducted from the sale proceeds to reimburse the plaintiff, and that those expenses are to be offset by the amount of rent owed to the defendants.  The plaintiff appeals as to the finding of "ouster" and exclusion, whereas the defendants appeal as to the award of reimbursement in regard to the repairs and improvements made by the plaintiff.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT, JR., P.J., M.S., joined.

Samuel J. Gowin, Chattanooga, Tennessee, for the appellant, Janella L. McCants.

Susanne Lodico, Chattanooga, Tennessee, for the appellees, Jacinta L. McGavock, Jesse L. McCants, Jr., and Jerel L. McCants.

# OPINION

## I. BACKGROUND

Janella L. McCants ("Appellant"), Jacinta L. McGavock ("Appellee McGavock"), Jesse L. McCants, Jr. ("Appellee Jesse McCants"), and Jerel L. McCants ("Appellee Jerel McCants") (collectively "Appellees") are siblings and the children of Dr. and Mrs. Jesse L. McCants, Sr. The parties' parents both passed within a few months of each other in 2013. Pursuant to the last will and testimony for Dr. McCants (the last survivor of the parties' parents), the family home located at 4710 Cordelia Lane ("the Property") was to pass to all four of the siblings as co-owners and cotenants. Before the death of the parties' father, Appellant lived at the Property and acted as caretaker to both the father and the Property. Under the provisions of the wills and mutual agreement of the parties, Appellant, a licensed attorney, became the executrix of the estate. While managing the estate in that capacity, under the direction of an estate attorney, Appellant executed a deed to the Property in her name as executrix of the estate. Ultimately, Appellant, as executrix, executed a deed in the name of all four siblings as co-owners, *i.e.,* Appellant and all three Appellees.

After a meeting of all four siblings shortly after Christmas in 2013, Appellant sent an email to Appellees outlining an agreement that Appellant would continue to live at the Property to repair and maintain it for eventual rental. Review of the record reveals that all parties agreed to this particular agreement but nothing further. During this initial meeting, other suggestions propounded were that the Property remain vacant until a suitable renter could be found, that the Property be rented to Appellant, or that the Property be put solely in Appellant's name.

Appellant was the sole resident of the Property from this point forward and conducted some aspects of her professional career as an attorney out of the house. Appellant sometimes met clients at the Property. Because Appellant owned a pair of rescue dogs that sometimes became nervous around strangers and in recognition of Appellant's personal and professional privacy, Appellees would usually call or email before they visited the Property. All Appellees kept personal items in the house and Appellee Jesse McCants kept some tools in the locked shed on the Property to which he had a key. The main entrance to the home included a screen door that Appellant kept latched when she was present. Appellees alleged that the lock to the front door was changed and that they did not receive a key afterwards. Appellant maintains, however, that despite the lock being changed, it utilized the same key as before. A secondary entrance that had been boarded up by the parties' father was eventually reopened. Only Appellant had the key to this door.

Exchanges of email included in the record reflect that the agreement was for

cotenants to contribute financially to the repairs and maintenance. Appellant sent an email to Appellees with a figure of $48,000 as the estimated cost of repairs and maintenance to the Property. Appellee McGavock and Appellee Jerel McCants, both of whom had other rental properties, believed the Property was already in rental condition and felt that the estimate was unreasonable. Appellee Jerel McCants, a Florida resident and an architect by profession, asked for an itemized list of the quotes in order that he could have contractors he knew check the figures. Appellee McGavock also requested a list of the quotes and suggested that the parties "speak by phone to discuss the list together." Appellant responded with hostility, stating: "Go talk amongst yourselves…. If you think you can do better, then do it yourself… Without my assistance." The list of the estimated quotes was never divulged by Appellant, who maintained that she kept a copy of the estimates in an area of the house to which Appellees had access. However, the record reflects that Appellees never obtained this information. Appellant began the repairs and improvements to the property around April 5, 2014, despite the lack of any acquiescence by Appellees.

The relationship between the parties began to sour. Multiple events occurred where the parties were hostile toward each other. For instance, in one email exchange, Appellee McGavock asked to bring her children to the Property to see Appellant's new dog. Appellant responded: "I'm in no mood to tolerate you or your kids." As part of the repairs and maintenance to the Property, Appellant began boxing and moving personal items belonging to Appellees to the locked portion of the basement. Appellees maintain that the personal property was to be kept in that locked portion of the basement to be removed once a suitable renter was found. However, Appellant began setting deadlines for the removal of the personal property even though no renter was in place and threatened to discard the items if not removed.

On April 10, 2014, Appellant sent a detailed email to Appellees purportedly explaining their rights as cotenants and giving them two options:

> 1) Sign the house over to me voluntarily or
>
> 2) I will take the house involuntarily through partition sale after the deed is recorded and the estate is closed
>
> If you select (2), you will each be required to hire lawyers for the partition action. [The estate attorney] can't represent you but he can probably represent me.…
>
> Give me your decision by tomorrow morning.

Thereafter, Appellant effectively refused to communicate with Appellees. Appellant also refused to answer the inquiries of Appellees in regard to whether the homeowners

insurance had been paid.

Just prior to July 6, 2014. Appellee McGavock indicated, through email, that she would visit the Property to pick up some personal items around noon. Appellant indicated her approval. However, Appellee McGavock arrived to the Property earlier than the stated time, at around 8:30 or 9 a.m. that morning. The door was locked, and she could not access the house. When Appellant finally answered the door, she related that she was working from home and that Appellee McGavock should come back at the agreed upon time, as she could not facilitate the removal of items at that time. Appellant argued that as executrix of the estate, she was required to be present when items were being taken from the Property. Appellee McGavock instead called the police in order to gain access to the Property. Only after the police required Appellant to allow Appellee McGavock in did Appellant let her sister and cotenant enter the Property. Since this event, Appellees, individually and collectively, observed that they felt excluded from the Property. Appellant asserts, however, that Appellees have come and gone since that time. The record shows, and the trial court found, that Appellant also refused to give Appellee McGavock keys to the Property or a remote for the garage door.

Appellant, as the plaintiff below, initially filed the underlying complaint in this matter, alleging a contract between the parties to transfer title to the Property to Appellant, who would maintain and repair the house for eventual rental. Appellant also sought damages for breach of contract, claims of tortious interference with the contract, and promissory estoppel. Appellees submitted a counterclaim seeking partition of the Property. The trial court held that Appellant failed to meet her burden of proof on the contract claim, which consequently destroyed the tortious interference of contract claim and failed to establish promissory estoppel. Additionally, the court found that Appellees successfully made a case for partition. The trial court further found that ouster was established and that Appellant had excluded her cotenants. The Judgment Order entered provided that Appellant must pay rent to Appellees beginning July 2014 in the amount of $27,000, ordered the partition of the property, and awarded Appellant $60,000 as reimbursement for the cost of the repairs and improvements.[1] Appellant appeals the finding of ouster that necessitates the payment of rent, whereas Appellees appeal the requirement that they pay for the cost of repairs and improvements.

---

[1] Based in part on the testimony of a realtor familiar with the parties and the neighborhood, the trial court determined that "the fair rental value of the [Property] was $1,000 a month, [Appellant] owes $750.00 a month ($1,000 less her 1/4 share) from July 2014 forward." Additionally, "[t]he Court further determines that it is inequitable for [Appellees] to have to pay any portion of [Appellant's] utilities she incurred."

## II. ISSUES

We consolidate and restate the issues on appeal submitted by both Appellant and Appellees as follows:

A.      Whether Appellant excluded her cotenants, which necessitates Appellant pay rent to the other cotenants; and

B.      Whether the trial court abused its discretion in awarding Appellant compensation for improvements/repairs on a property held in a concurrent tenancy.

## III. STANDARD OF REVIEW

This is an appeal from a non-jury case, and as such, our review is *de novo* based upon the record of the proceedings. Tenn. R. App. P. 13(d); *Parker v. Lambert*, 206 S.W.3d 1, 3 (Tenn. Ct. App. 2006). Pursuant to Rule 13(d), we review the lower court's findings of fact with a presumption of correctness, unless the record reflects otherwise to a preponderance of the evidence. *Id.* Conclusions of law do not carry this presumption. *Id.* Additionally, "[o]ur *de novo* review is subject to the well-established principle that the trial court, having seen and heard the witnesses testify, is in the best position to judge their credibility." *Keaton v. Hancock Cnty. Bd. of Educ.*, 119 S.W.3d 218, 223 (Tenn. Ct. App. 2003) (*citing Bowman v. Bowman,* 836 S.W.2d 563, 567 (Tenn. Ct. App. 1991)). Great deference must be shown to the trial court's credibility determinations. *Id*.

## IV. DISCUSSION

### A.

Our Supreme Court, speaking through Justice Holly Kirby, recently instructed as follows:

At common law, the type of tenancy that results from a conveyance of real property to two or more persons depends on the [sic] whether the four unities—interest, title, time, and possession—exist at the time of conveyance. . . . If the four unities exist but the conveyance is to unmarried persons, the conveyance results in a joint tenancy; by operation of law, a common-law joint tenancy includes a right of survivorship even when no words of survivorship are used in the granting instrument. If, however, the four unities are not present at the

- 5 -

time of the conveyance, the conveyance results in a tenancy in common, which does not include a right of survivorship.

*Bryant v. Bryant*, 522 S.W.3d 392, 399-400 (Tenn. 2017) (internal citations omitted). Additionally, the Court recognized the differences at common law between a joint tenancy and a tenancy in common:

At common law, the primary difference between holding in joint tenancy and tenancy in common is that joint tenancy includes a right of survivorship between the co-tenants by operation of law, whereas tenancy in common does not. . . . [B]oth joint tenancy and tenancy in common "impl[y] a plurality of persons" and "each of the owners has an undivided moiety [(i.e., part)] or other proportional part, of the whole premises."

"Tenants in common are jointly seized of the whole estate, each having an equal right of entry and possession . . . ." Right of survivorship is not an incident of tenancy in common; however, the grantor may include in the instrument of conveyance express language attaching a right of survivorship to the tenancy in common.

*Id.* at 400-01 (internal citations omitted). The *Bryant* Court further clarified:

Because joint tenancies no longer include a survivorship interest by operation of law, both joint tenants and tenants in common have essentially the same rights, which are the "right to use, to exclude, and to enjoy a share of the property's income. . . ."

*Id.* at 404 (internal citations omitted).

Where jointly held property is sold, the sale proceeds are to be divided between the parties in accordance with their rights as determined by the court. Tenn. Code. Ann. § 29-27-217; *see* also Tenn. Code. Ann. § 29-27-113. "[T]he Court has a statutory and inherent right to adjust the equities and settle all claims between or among the parties…." *Yates v. Yates*, 571 S.W.2d 293, 296 (Tenn. 1978). In *Parker*, the court addressed the principles that the trial court should apply in arriving at the equitable distribution of monies from a partition sale:

The[re] are five primary principles governing compensation in the partition context. First, the courts will compensate a

- 6 -

cotenant who improved the jointly owned property as long as the improvements enhanced the property's value. Generally, the amount of this compensation cannot exceed the amount by which the improvements enhanced the land's value. Second, cotenants must equally contribute to satisfying encumbrances on the property. Third, cotenants must also equally contribute to expenses for necessary repairs and maintenance of the jointly owned property. However, "a cotenant is not entitled to credit for the value of personal services in managing and caring for the property," unless the cotenants have an agreement to the contrary. Fourth, a cotenant with sole possession of the property is liable to other cotenants for any profits received in excess of his or her pro rata share. Fifth, a cotenant with sole possession of the property who has excluded his or her cotenants from the property or who has denied their title to any part of the property, must pay rent to the cotenants for the use and occupation of the property regardless of the profits received.

*Id*. at 5 fn. 2 (internal citations omitted).

It is a general rule that cotenants enjoy an equal right to possession. Accordingly, our Supreme Court has stated in regard to this matter: "Any tenant in common has the right to enter upon the common estate and take possession of the whole thereof, subject only to the equal right of his co-tenants, with whose possession he may not interfere." *Puryear v. Belcher*, 614 S.W.2d 344, 345-46 (Tenn. 1981) (quoting *Garland v. Holston Oil Co.*, 53 Tenn. App. 703, 386 S.W.2d 914 (1964); 86 C.J.S. Tenancy in Common § 20 (1954)). Furthermore, "a cotenant must equally share both the burdens of land ownership (i.e., the responsibility of preserving the land) as well as the benefits of the land ownership. If one cotenant bears a disproportionate share of the burden, the other cotenants must provide compensation." *Parker*, 206 S.W.3d at 5. The court in *Parker* further clarified the rule and stated: "[a]lthough a cotenant is not allowed to exclude other cotenants from jointly-owned property, such behavior is not an absolute bar to a contribution claim. A cotenant who has excluded his or her cotenants from the property must pay rent to those cotenants for the use and occupation of the property." *Id*. at 6 (citing *Johnson v. Covington*, 148 Tenn. 47, 251 S.W. 893, 898 (1923)).

"There is generally a presumption that joint tenants have equal interests, but a tenant who pays more than his or her share for the property may seek contribution to compensate him or her." *Brewer v. Brewer*, No. M2010-00768-COA-R3-CV, 2011 WL 532267, at *2 (Tenn. Ct. App. Feb. 14, 2011); *see also Harris v. Taylor,* No. W2004-02855-COA-R3-CV, 2006 WL 772007, at *3 (Tenn. Ct. App. Mar. 28, 2006). Thus, the sale proceeds resulting from the partition of the property are to be divided among the

parties equally subject to the compensations awarded. In the instant case, there is no indication or argument advanced by the parties that the shares are to be treated in any way other than equally. There are also no arguments that the partition itself was improper.

We turn now to the compensation for rent awarded to Appellees. As indicated, the fifth principle governing compensation is "a cotenant with sole possession of the property who has excluded his or her cotenants from the property or who has denied their title to any part of the property, must pay rent to the cotenants for the use and occupation of the property regardless of the profits received." *Parker*, 206 S.W.3d at 5 fn. 2. The language in *Parker* and its accompanying case law reveals that an aggressive showing of "ouster" is not required, at least not in the form needed in adverse possession and prescription cases. *See Ridley v Watson*, No. M2007-01241-COA-R3-CV, 2008 WL 3895952, at *6 (Tenn. Ct. App. Aug. 22, 2008) ("this [entitlement to rents] is predicated upon the exclusion, by the sole possessor, of his or her co-tenants from the property."); *see also Bunch v. Bunch*, No. 02A01-9705-CH-00106, 1998 WL 46217, at *4 (Tenn. Ct. App. Jan. 8, 1998) ("[I]n distributing the proceeds of a partition sale, a cotenant in sole possession of the property is liable to the other cotenants for rents and profits received in excess of his pro rata share."); but *see Johnson*, 251 S.W. at 898 ("[A] tenant in common who is in sole possession of the common property will be liable to account to his cotenant for the rents and profits thereof, where the possession of the occupying tenant is of such a nature as to amount to an ouster of his cotenant, or the equivalent of an ouster."); *Butler v. Butler*, No. 86-60-II, 1986 WL 8593, at *2 (Tenn. App. Ct. Aug. 6, 1986) (The law of Tennessee is in keeping with the general rule that "in the absence of an agreement or understanding to the contrary, a tenant in common in possession of the property, without ousting his cotenants or denying their title to any part thereof, is not liable to account to them on partition for use and occupation. . . ." 68 C.J.S. Partition § 138 (1950).")

"Ordinarily, a tenant in common is presumed to hold on behalf of himself and all other co-tenants, and therefore the possession of one tenant in common is not ordinarily held to be hostile to the co-tenants." *Howell v. Howell*, No. 01A01-9806-CV-00301, 1999 WL 536261, at *9 (Tenn. Ct. App. July 27, 1999). "An ouster, in the law of tenancy in common, is the wrongful dispossession or exclusion by one tenant in common of his cotenant or cotenants from the common property of which they are entitled to possession." *Envision Props., LLC v. Johnson*, No. E2005-00634-COA-R3-CV, 2005 WL 2860195, at *5-6 (Tenn. Ct. App. Oct. 31, 2005). In *Nesmith v. Alsup*, No. 01-A-01-9809-CH00509, 1999 WL 557620 (Tenn. Ct. App. Aug. 2, 1999), the court observed as follows:

> An ouster does not necessarily mean a physical expulsion of one party by another, but it requires the party claiming adversely to perform some act that makes it clear to his cotenant that she is being excluded from ownership. In the

case of *Drewery v. Nelms*, 132 Tenn. 254, 177 S.W. 946 (1915), our Supreme Court explained the ouster requirement this way:

"This ouster by one tenant in common against his cotenant may occur, but it takes something more than an appropriation of the rents without an accounting. The mere silent, sole occupation by one of the entire property, though he be claiming the whole estate, and appropriating the whole rents, without an accounting to or claim by the others, without notice of his cotenant that his possession is adverse, and unaccompanied by some act which can amount to an exclusion and ouster of the cotenant, cannot be construed into an adverse possession. This ouster and exclusion may be effected by taking possession and affording actual notice of a claim of sole ownership or other positive and unequivocal act that must by its nature put the other cotenants upon notice that they are excluded from the possession."

*Nesmith*, 1999 WL 557620, at \*4.

In the instant case, the trial court found that ouster was established and that Appellant, as cotenant with sole possession, had excluded her other cotenants from the Property. The Judgment Order indicates that the payment of rent is predicated on this exclusion.

Appellant argues that she did not exclude her cotenants and that they were able to come and go freely as they pleased. Appellees, however, contend that Appellant acted as if she was the sole owner of the Property and refused them access to the Property unless it was on her terms. Appellant also demanded for Appellees to remove their personal property from the house despite the fact that she did not have a renter lined up. For those reasons, we agree with the trial court in its conclusions that "[Appellant] refused to allow [Appellees] entry upon the [Property] except on her terms and [Appellant] treated the [Property] as though she were the sole owner." These acts are contrary to the equal right of possession that is enshrined in our law governing co-tenancy that is "subject only to the equal right of his co-tenants, with whose possession he may not interfere." *Puryear*, 614 S.W.2d at 345-46. Thus, the award to Appellees for compensation in the form of rent is in line with the *Parker* court's fifth principle governing compensation: "a cotenant with sole possession of the property who has excluded his or her cotenants from the property or who has denied their title to any part of the property, must pay rent to the cotenants for the use and occupation of the property regardless of the profits received." *Id*. at 5 fn. 2.

**B.**

We now turn to the award of compensation for the repairs/improvements made by Appellant on the co-owned property. Because this award implicates more than one of the principles of compensation indicated above, we repeat the first three:

> First, the courts will compensate a cotenant who improved the jointly owned property as long as the improvements enhanced the property's value. Generally, the amount of this compensation cannot exceed the amount by which the improvements enhanced the land's value. Second, cotenants must equally contribute to satisfying encumbrances on the property. Third, cotenants must also equally contribute to expenses for necessary repairs and maintenance of the jointly owned property.

*Parker*, 206 S.W.3d at 5 fn. 2 (internal citations omitted). These principles, when read together with the pertinent case law, indicate that the trial court's award of compensation for improvements is consistent with its equitable and discretionary powers.

In its Judgment Order, the trial court found that Appellant expended approximately $19,000 on "repairs/improvements" before the filing of the initial suit and an additional $41,000 on "repairs/improvements" after filing suit. The court awarded Appellant the sum of these figures, $60,000, in compensation. The court noted that the award does not include utilities incurred by Appellant during the period of exclusion and that Appellant was solely responsible for those expenses. The award did include, however, amounts for taxes on the Property paid by Appellant. In regard to the continued improvement of the Property after Appellant filed suit, the trial court expressed its disapproval of these expenses and held that Appellant came into court with unclean hands.

Appellees contend that the award for compensation of improvements and repairs should have been limited to the amount that the improvements enhanced the value of the Property. Thus, Appellees contend the case should be remanded to the trial court for a determination of the unimproved value of the Property. Appellees further contend that the trial court's award is "contrary to black-letter Tennessee law and is reversible error." Appellant responds that this award was within the power of the trial court's equitable and discretionary powers and that courts often make exceptions to the general rule.

In *Broyles v. Waddel*, 58 Tenn. 32, 1872 WL 3987 (1872), our Supreme Court stated: "[i]n cases of partition, a court of equity, it is said, does not act merely in a ministerial character, but it founds itself upon its general jurisdiction as a court of equity, and administers its relief *ex equo et bono*, according to its own notion of general justice

- 10 -

and equity between the parties. It will therefore, by its decree, adjust all the equitable rights of parties interested in the estate." *Id*. at 41. *See* also *Yates*, 571 S.W.2d at 298 (reflecting on the "statutory and inherent right to adjust the equities and settle claims between or among the parties" that is possessed by the courts). In *Wilburn v. Kingsley*, 3 Tenn. App. 88, 1926 WL 2026 (Tenn. Ct. App. 1926), this court recognized its "right to exercise discretion in the matter, rather than to follow an arbitrary rule." *Id*. at 10. The *Wilburn* court awarded the full amount of costs incurred rather than limiting the recovery to the amount that the improvement enhanced the property. Likewise, in *Butler*, the court awarded compensation for a mixture of taxes, repairs, maintenance, and improvements. *Id*. at *2-3. The appellate court affirmed the award for compensation in the full amount and further noted its equitable powers to do so: "equity will take this fact into consideration on partition and will in some way compensate him for such improvements." *Id.* at *5.

In the instant case, considerable evidence was introduced about the expenses incurred by Appellant for items such as taxes, repairs, and improvements. Appellees conceded that they did not object to paying their shares of the taxes incurred. Additionally, the initial agreement of the parties was for Appellant to reside at the Property and to repair and maintain it until a suitable renter could be found. Appellees did not object to contributing to repairs and improvements; rather, the disagreement was only to the amount. Although the Judgment Order did not specifically note whether the repairs were necessary, we find the award within the discretion of the trial court.

Appellees argue that an award to a cotenant with unclean hands is inequitable and should be barred. However, "[d]ecisions regarding the proper application of the doctrine of unclean hands are heavily fact-dependent and are addressed to the considerable discretion of the trial court." *In re Estate of Boote*, 265 S.W.3d 402, 418 (Tenn. Ct. App. 2007). Although the trial court did hold that Appellant had unclean hands by continuing to improve the Property without input from Appellees, review of the record as a whole reveals that the trial court acted within its discretion in not applying the doctrine of unclean hands.

## C.

During our consideration of this appeal, an issue arose concerning the conditions of the stay of execution of the judgment. Pursuant to the language of the trial court's Judgment Order, the parties "agreed to move forward jointly with the Clerk and Master conducting a family auction" and "worked together to arrange the auction. . . ." The auction was conducted in 2018, with the high bid of $150,000 coming from Appellant. The trial court, however, rejected the results of the auction and stayed execution.

Without the required bond to stay the case in place, we find that the parties did not act improperly in proceeding with the family auction by agreement. The unopposed

motion to permit the sale of the Property is granted.

## V. CONCLUSION

For the reasons stated above, we affirm the decision of the trial court. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the Appellant/Appellee, Janella L. McCants.

_____
JOHN W. MCCLARTY, JUDGE