# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 19, 2020 Session

## IN RE ESTATE OF MARTHA B. SCHUBERT

**Appeal from the Chancery Court for Knox County**
**No. 65462-1     Deborah C. Stevens, Judge[1]**

### No. E2019-02069-COA-R3-CV

This is the second appeal of this action concerning the construction of the last will and testament of the decedent.  In the first appeal, we reversed the trial court's finding that the property at issue vested in her designated heir at the time of the decedent's passing.  Upon remand, the trial court held that the property vested when the personal representative executed warranty deeds for the property at issue, despite the fact that the deeds were never recorded.  We now uphold the trial court's ruling and remand for further proceedings necessary for the distribution of the estate.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II and KRISTI M. DAVIS, JJ., joined.

John A. Lucas, Knoxville, Tennessee, for the appellant, John Clinton Schubert.

James S. Tipton, Jr. and Mack A. Gentry, Knoxville, Tennessee, for the appellee, Richard L. Hollow, Executor of the Estate of Martha B. Schubert.

Daryl R. Fansler, Knoxville, Tennessee, for the appellee, Morgan Alexander Schubert, Jr.

---

[1] Sitting by interchange.

# OPINION

## I. BACKGROUND

Martha B. Schubert ("Decedent") died on August 31, 2006. The will was admitted to probate, and Richard L. Hollow was appointed as the executor and personal representative of the estate. Decedent's will provided for the passing of her property in equal shares to her two sons, Morgan Alexander Schubert, Jr. ("Alex Schubert") and John Clinton Schubert ("John Schubert").[2] The will provides, in pertinent part, as follows:

> All of the residue of my property, real, personal and mixed, of whatsoever kind and wheresoever situated, I give, devise and bequeath as follows:
>
>> 50% to my son, Morgan Alexander Schubert, Jr.
>> 50% to my son, John Clinton Schubert.
>
> It is my specific will and request that all real estate which I own or may own at the date of my death located on Cherokee Boulevard and running to Wilani Drive to the rear, including the Dan Mayo property, be given to my son, John Clinton Schubert, as part of his share of my estate.
>
> * * *
>
> The Testatrix recognizes and by this instrument declares that she is aware that a substantial portion of her estate may include real estate and other assets which cannot be divided as easily as cash, stocks, bonds or securities. In recognition of this fact, it is the will of the Testatrix that her estate, including real estate, be divided between her heirs as hereinabove set forth. It is her will and wish that her heirs agree as to the division of the assets of her estate. It shall be the duty of the Executor to ensure that an equitable division has taken place and, to that end, the Executor is granted the authority to cause appraisals and other evaluations of estate assets to take place to ensure, insofar as possible, the equitable division herein requested. The Executor is also granted the express authority, in addition to other authorities given to him by this instrument and by law, to exercise, in his discretion, veto power of any plan of distribution if, in his sole discretion, it appears to be not in conformity with the wishes of the Testatrix as set forth in this document. If, in the sole discretion of the Executor, it appears that the ability of the heirs to fairly and equitable [sic] divide the estate assets by

---

[2] Generally, we refer to the parties by his or her surname. We will refer to the heirs in this case by their preferred first and last name for ease of reference because the heirs share the same surname.

agreement does not exist or has been lost, then the Executor, in his sole discretion, shall order the assets of the estate liquidated in an orderly fashion and the proceeds distributed in accordance with the wishes of the Testatrix as expressed in this document.

John Schubert has paid all expenses of ownership, beginning in January 2008 with no request for reimbursement until the proceedings at issue began. He also allowed his employees to live on the property. Mr. Hollow prepared two deeds for the property in 2008 but never recorded the deeds or delivered them to John Schubert.

Negotiations concerning the division of Decedent's assets were delayed for several years. Notably, the estate at issue is of significant value. Mr. Hollow intended to award a catch-up distribution to Alex Schubert to account for John Schubert's use and enjoyment of the property given the protracted litigation that has ensued in this case. Details of this distribution could not be agreed upon by the parties, prompting Mr. Hollow to file a petition seeking construction of certain portions of the will. The trial court referred the case to the Clerk and Master, who held a hearing. In the first appeal, we summarized the evidence presented, in pertinent part, as follows:

Mr. Hollow testified that he believes that the Cherokee Lots vested in John Schubert immediately upon the death of Deceased pursuant to statute. Despite this belief Mr. Hollow had two personal representative deeds for the Cherokee Lots prepared in May of 2008 deeding the properties to John Schubert. Mr. Hollow had these personal representative deeds prepared at John Schubert's request. Mr. Hollow testified that those deeds were tendered to John Schubert, but were not accepted and were not recorded. When asked why they were not recorded, Mr. Hollow stated: "It was my impression based upon information that we had exchanged during the meetings that we held during a period of the administration of the estate that the property vested in [John Schubert] at the date of death."

*In re Estate of Schubert*, No. E2014-01754-COA-R3-CV, 2015 WL 4272192, at *2 (Tenn. Ct. App. July 15, 2015) ("*Schubert I*"). Following the hearing, the Clerk and Master held that divestment of the property occurred at the time of Decedent's passing.

The trial court adopted the Clerk and Master's finding over John Schubert's objection. In so holding, the trial court found that the will was devoid of any language providing for the direction of the administration of the property as part of the estate subject to the control of Mr. Hollow pursuant to Tennessee Code Annotated section 32-2-103, which provides, in pertinent part, as follows:

The real property of a testate decedent vests immediately upon death in the beneficiaries named in the will, unless the will contains a specific provision directing the real property to be administered as part of the estate subject to the control of the personal representative.

John Schubert appealed to this court. We reversed the trial court's finding regarding the divestment of the property and held as follows:

The Will directs that the real property in question is to "be given to my son, John Clinton Schubert, as part of his share of my estate." Preceding this specific phrase the Will states: "All of the residue of my property, real, personal and mixed, of whatsoever kind and wheresoever situated, I give, devise and bequeath as follows: ...." The specific phrase with regard to the Cherokee Lots, however, contains only the words "be given," not the words "devise" or "bequeath." The direction that the property "be given" indicates that this property is to be administered as part of Deceased's estate and "given" to John Schubert "as part of his share of [Deceased's] estate" by the personal representative of the estate. The words "be given" without words such as "devise" or "bequeath" show that further action is necessary before the property can vest in John Schubert, especially in light of Deceased's specific direction that it be a "part of [John Schubert's] share of my estate."

The analysis that the Cherokee Lots did not vest in John Schubert immediately upon Deceased's death is further supported by Article V of the Will wherein Deceased acknowledged "that a substantial portion of her estate may include real estate and other assets which cannot be divided as easily as cash, stocks, bonds or securities, ..." and then made it "the duty of the Executor to ensure that an equitable division has taken place ..." and granted the executor the authority to do things to effectuate the division. Article V also provided the executor the power to liquidate Deceased's assets if necessary. Deceased acknowledged in Article V that a substantial portion of her estate may consist of real property, which the executor would be unable to liquidate "to ensure that an equitable division ..." was achieved if the real property was not subject to the administration of the estate. Thus, Article V supports the conclusion that the real property contained in the specific bequest to John Schubert did not vest immediately in John Schubert upon Deceased's death, but instead was subject to the administration of the estate.

We hold that the Cherokee Lots did not vest in John Schubert immediately upon Deceased's death because the Will contained specific provisions directing that the real property was to be administered as part of Deceased's estate subject to the control of the personal representative. As such, we reverse that portion of the Trial Court's judgment holding that the Cherokee Lots vested in John Schubert immediately upon Deceased's death.

*Schubert I*, 2015 WL 4272192, at *5-6 (Tenn. Ct. App. July 15, 2015). Absent from this court's conclusion was a ruling concerning when the property actually vested. We declined to offer such instruction when the trial court did not address the issue.

Upon remand, the Schuberts still could not agree upon the division of the estate. Mr. Hollow filed yet another petition, dated June 6, 2016, requesting instruction as to whether title to the property had vested and if so, when the property vested. He requested the following relief:

1.      That this Court set a hearing to make findings and conclusions and to grant the relief requested in this Petition.

2.      That this Court determine, to the extent that the issue is disputed, whether or not title to the Property vested in John Schubert on May 6, 2008, or whether such vesting will occur only upon final distribution of the Estate of the Executor.

3.      That this Court determine, if it should find and conclude that title to the Property vested in John Schubert on May 6, 2008, the appropriate manner of allocation of Estate expenses associated with the Property from and after such date, and the proper allocation of income earned by the Estate on remaining Estate assets (excluding the Property) from and after such date, and whether any adjustment based on John's use and possession of the Property is appropriate, if it finds that title to the Property did not vest in John on May 6, 2008.

4.      That this Court determine any related issues which the Executor or the beneficiaries may present at such hearing.

5.      That final accounting and final distribution of Estate assets and the closing of the Estate administration be reserved until final hearing of the Court.

During the pendency of the proceeding, Mr. Hollow executed and recorded a second set of warranty deeds, dated September 23, 2016.

The case proceeded to a hearing before the Clerk and Master in March 2017, at which Mr. Hollow confirmed his belief that the property vested at the time of Decedent's passing. He provided that the property expenses were initially paid by the estate but that he later advised John Schubert that the estate would no longer remit payment for those expenses. He noted that John Schubert acquiesced and assumed payment of the expenses in 2008.[3] He then prepared warranty deeds, dated May 6, 2008, at John Schubert's request. He advised John Schubert that the deeds had been prepared and were available at his office. He did not record the deeds. Likewise, John Schubert did not retrieve the deeds. He explained that he prepared the deeds to divest any title from the estate, to the extent that it held any claim to the property. He stated that he then executed and recorded new warranty deeds as a result of this court's opinion. He provided that despite his execution of the 2008 and 2016 deeds, he still believed the property vested at the time of Decedent's passing. He acknowledged that he was bound by this court's opinion in which we found otherwise.

John Schubert testified at the hearing that he paid the expenses related to the property solely based upon Mr. Hollow's assertion that the estate would no longer remit payment. Following the hearing, the Clerk and Master held that title vested via the warranty deeds executed on May 6, 2008. John Schubert filed exceptions to the Clerk and Master's report. The trial court affirmed the Clerk and Master's finding but did not address the allocation of estate expenses as a result of such finding or any other issues presented in the petition for further instructions. This timely appeal followed.

---

[3] The estate resumed payment of the expenses following this court's opinion in 2015.

## II.     ISSUES

We consolidate and restate the issues on appeal as follows:

A.     Whether this court has jurisdiction to consider the appeal.

B.     Whether the trial court erred in holding that title vested at the time of the execution of the 2008 warranty deeds.

C.     Whether the trial court abused its discretion in its ruling on the admissibility of evidence.


## III.     STANDARD OF REVIEW

As stated in our prior opinion, this court discussed the standard of review to be applied in cases involving the construction of a will in *Horadam v. Stewart* stating:

> The construction of a will is a question of law for the court; therefore, we review the trial court's conclusions of law de novo affording them no presumption of correctness. In cases involving the construction of wills, the cardinal rule is that the court shall seek to discover the intention of the testator, and will give effect to [that intent] unless it contravenes some rule of law or public policy. Furthermore, in will construction cases, we rely on the language of the instrument to determine the testator's intent:

> [T]he testator's intention must be ascertained from that which he has written in the will, and not from what he may be supposed to have intended to do, and extrinsic evidence of the condition, situation and surroundings of the testator himself may be considered only as aids in the interpretation of the language used by the testator, and the testator's intention must ultimately be determined from the language of the instrument weighed in the light of the testator's surroundings, and no proof, however conclusive in its nature, can be admitted with a view of setting up an intention not justified by the language of the writing itself.

> Our Supreme Court has said that when ascertaining the testator's intent by construing the language used in a will, we must consider the entire will as a whole.

*Horadam v. Stewart*, M2007-00046-COA-R3-CV, 2008 WL 4491744, at \*5 (Tenn. Ct. App. Oct. 6, 2008), *perm. app. denied* (Tenn. April 27, 2009) (internal citations and quotations omitted).

Rulings on admissibility of evidence are within a trial court's discretion. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999). "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard or reache[s] a decision which is against logic or reasoning that cause [s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). We review the decision of the trial court to determine:

> (1) whether the factual basis for the decision is supported by the evidence, (2) whether the trial court identified and applied the applicable legal principle, and (3) whether the trial court's decision is within the range of acceptable alternatives.

*White*, 21 S.W.3d at 223. Improper admission or exclusion of evidence requires a new trial if the outcome of the trial was affected. Tenn. R. App. P. 36(b); *White*, 21 S.W.3d at 222.

## IV. DISCUSSION

### A.

As a threshold issue, Alex Schubert questions this court's jurisdiction, asserting that the order appealed from was not a final order. He claims that the court failed to rule on several issues concerning the allocation of the estate and did not certify the order appealed from as final.

"A final judgment is one that resolves all the issues in the case, 'leaving nothing else for the trial court to do.'" *In Re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) (quoting *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997)). "[A]ny order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties." Tenn. R. App. P. 3(a). Here, the trial court did not address a number of issues in the petition for instructions. The court also did not "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties . . . upon an express determination that there is no just reason for delay and upon an express direction for the

entry of judgment" as required by Rule 54.02 of the Tennessee Rules of Civil Procedure. Accordingly, the order appealed from is not a final judgment.

Having determined that the order on appeal is not a final judgment, we turn now to John Schubert's request that we suspend the finality requirements pursuant to Rule 2 of the Tennessee Rules of Appellate Procedure. Rule 2 provides, in pertinent part as follows:

> For good cause, including the interest of expediting decision upon any matter, [the Court of Appeals] may suspend the requirements or provisions of any of these rules in a particular case on motion of a party or on its motion and may order proceedings in accordance with its discretion[.]

"This Court will suspend the finality requirements of Rule 3 of the Tennessee Rules of Appellate Procedure only in the most extenuating circumstances, where justice so demands." *Williams v. Tennessee Farmers Life Reassurance Co.*, No. M2010-01689-COA-R3-CV, 2011 WL 1842893, *6 (Tenn. Ct. App. May 12, 2011). "The finality requirements of Rule 3 may not be 'waived' by the parties, and we will not suspend Rule 3 as a mere convenience or to work an end-run around Rule 54.02 of the Tennessee Rules of Civil Procedure, or Rules 9 and 10 of the Tennessee Rules of Appellate Procedure." *Id.*

In consideration of the foregoing, we note the protracted litigation that has preceded this appeal, the fact that this is the second appeal of an issue pertaining the vesting of the property, and the necessity of providing a determination on this issue to facilitate the remainder of the distribution of the estate. The parties will also undoubtedly return to this court for further relief if we decline to suspend the rule and provide a definitive ruling on this issue. The interests of justice and judicial economy are best served by this court exercising jurisdiction over this appeal, despite the lack of a final judgment. Accordingly, we suspend pursuant to Rule 2 the requirement under Rule 3(a) that there be a final judgment for purposes of an appeal as of right. *See generally Parker v. Lambert*, 206 S.W.3d 1, 3-4 (Tenn. Ct. App. 2006) (electing to suspend finality requirement where the only issues left unadjudicated were the calculation of the amount of one party's attorney's fees and the "possibility" that the trial court would have to supervise the sale of property if the parties could not agree on a sales price or realtor); *In Re Estate of Goza*, No. W2013-00678-COA-R3-CV, 2014 WL 7235166, * 3-4 (Tenn. Ct. App. Dec. 19, 2014) (electing to suspend finality requirement after consideration of "the immense amount of resources already expended in this litigation" in which the parties had "already attempted to litigate the same issue in three different courts"); *In Re Estate of James*, No. E2012-01021-COA-R3-CV, 2013 WL 593802, *7 (Tenn. Ct. App. Feb. 14, 2013) (electing to suspend finality requirement where the only issue left unadjudicated

was "the issue of approving any additional fees and expenses that were incidental to the hearing or that were necessary to close the estate"); *Dulin v. Dulin*, No. W2002-02758-COA-R3-CV, 2004 WL 1238142, * 3 (Tenn. Ct. App. Jun. 3, 2004) (electing to suspend finality requirement "because of the long and protracted proceedings involved in this case" and noting that it was the second appeal of the case).

B. & C.

John Schubert's objection to the trial court's ruling is essentially based upon the fact that Mr. Hollow could not have the requisite intent necessary to execute the 2008 deeds or even the 2016 deeds because Mr. Hollow has always believed that the property vested at the time of Decedent's passing. He further claims that neither delivery nor acceptance of the deeds was perfected under the circumstances presented in this case.

Like in *Schubert I*, Tennessee Code Annotated section 31-2-103 is of particular importance in determining the issues presented. Section 31-2-103 provides as follows:

> The real property of an intestate decedent shall vest immediately upon death of the decedent in the heirs as provided in § 31-2-104. The real property of a testate decedent vests immediately upon death in the beneficiaries named in the will, unless the will contains a specific provision directing the real property to be administered as part of the estate subject to the control of the personal representative. *Upon qualifying, the personal representative shall be vested with the personal property of the decedent for the purpose of first paying administration expenses, taxes, and funeral expenses and then for the payment of all other debts or obligations of the decedent as provided in § 30-2-317.* If the decedent's personal property is insufficient for the discharge or payment of a decedent's obligations, the personal representative may utilize the decedent's real property in accordance with title 30, chapter 2, part 4. *After payment of debts and charges against the estate, the personal representative shall distribute the personal property of an intestate decedent to the decedent's heirs as prescribed in § 31-2-104, and the property of a testate decedent to the distributees as prescribed in the decedent's will.*

(Emphasis added.).

In *Schubert I*, we held that the property at issue did not vest in John Schubert immediately upon Decedent's death because the will contained specific provisions directing that the property was to be administered as part of Decedent's estate subject to

the control of the personal representative. Accordingly, the property passed to Mr. Hollow as the personal representative at the time of Decedent's passing. In accordance with Section 31-2-103, Mr. Hollow paid the necessary expenses and then distributed the property to John Schubert as prescribed in the will by virtue of his execution of the 2008 warranty deeds.

While we acknowledge John Schubert's novel argument that the requisite intent was not present at the time of execution, we must remind him that Mr. Hollow has always believed that the property belonged to John Schubert via the Decedent's will, whether at the time of Decedent's passing, the execution of the 2008 deeds, or the execution of the 2016 deeds. As personal representative of the estate, Mr. Hollow deeded the property to John Schubert to divest title from himself as personal representative of the estate, to the extent that he held any claim to the property. He likewise provided John Schubert with notice of the deeds. Such action is sufficient to divest title from himself as the personal representative pursuant to Section 31-2-103. Moreover, the actions of the parties prior to *Schubert I* support the validity of the divestment. John Schubert paid the expenses for the property for several years, totaling in excess of $300,000, and even allowed his employees to live there. *Cf. Kilgore v. Kilgore*, No. M2006-00495-COA-R3-CV, 2007 WL 2254568, at *6-7 (Tenn. Ct. App. Aug. 1, 2007) (affirming the trial court's finding that a deed was insufficient to transfer title, despite recording, when the alleged grantor retained possession and control of the property).

To rebut these facts, John Schubert attempted to offer evidence establishing Mr. Hollow's inconsistent statements concerning the ownership of the property, namely emails between the parties concerning different ways in which to divide the estate, including the property at issue; statements made by Mr. Hollow's counsel; prior transcripts; and deposition testimony. These documents were excluded by the court. John Schubert objects to the court's refusal to consider the proffered evidence. Our review of the record supports the trial court's findings of inadmissibility. Further, any alleged error in the court's refusal to consider the evidence is harmless given the record before this court. Mr. Hollow admitted the inconsistency of his actions by virtue of the fact that he always believed the property vested at the time of Decedent's passing.

Finally, we must address John Schubert's argument that the deed was neither delivered nor accepted in accordance with Tennessee law. John Schubert reasons that delivery and acceptance was required because the property did not vest automatically at Decedent's passing. We agree that delivery, in some form, was required; however, a formal acceptance of the deed was not necessary given the donative nature of the transfer at issue. *See Kilgore*, 2007 WL 2254568, at *5 ("An otherwise valid gift of realty by a grantor is complete and irrevocable after delivery of the deed to the grantee.") (citation

omitted).  Absent disclaimer, the transfer was effective upon delivery of the deed.[4]  This court has provided the following guidance on the issue of delivery:

> Manual transfer of the deed is not necessary if the grantor intends for the deed to take effect without its physical transmission to the grantee.  Where delivery is in question, the intention of the grantor, determined from his or her words and conduct, is a controlling factor.  Because rarely susceptible of proof by direct evidence, the grantor's intent may be gleaned from circumstantial evidence and from generally recognized presumptions.

*Kilgore*, 2007 WL 2254568, at *5 (citations omitted).  As discussed previously, Mr. Hollow intended to transfer the property, to the extent he held any title as personal representative of the estate, when he executed the 2008 deeds and advised John Schubert of the deeds.  For his part, John Schubert paid the expenses for the property and treated the property as his own until the present litigation, years after the execution of the 2008 deeds.

With all of the above considerations in mind, we uphold the trial court's ruling.  All other issues and arguments are pretermitted.

## V. CONCLUSION

We affirm the decision of the trial court and remand for such further proceedings as may be necessary.  Costs of the appeal are taxed to the appellant, John Clinton Schubert.

_____
JOHN W. McCLARTY, JUDGE

---

[4] The record does not establish that John Schubert took any action to disclaim the property.