**Susan PARKER**

v.

**Richard LAMBERT.**

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

Feb. 7, 2006 Session.

April 10, 2006.

Permission to Appeal Denied by
Supreme Court Oct. 16, 2006.

J. Christopher Hall and Valerie H. Richardson, Chattanooga, Tennessee, for appellant.

Andrew L. Berke and Megan C. England, Chattanooga, Tennessee, for appellee.

## OPINION

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and SHARON G. LEE, J., joined.

The Trial Court Ordered jointly held property sold, the proceeds divided equally, and awarded attorney's fees to one party. On appeal, we vacate the Judgment and direct the Trial Court to divide the proceeds, taking into account the contributions and entitlements of the parties and reconsider the award of attorney's fees.

Parker filed this action against Lambert, averring that the parties are tenants in common in a parcel of real estate, and that the property could be partitioned in kind. She asked that the Court order the property sold and divide the proceeds equally between the parties. Parker also asked the Court to require Lambert to pay rent to her for his use of the property until the property was sold and she also asked for attorney's fees and costs.

In Lambert's Amended Answer and Counter Claim, he averred that he solely provided the consideration for the purchase of the property, and that he made all the payments on the promissory note, except for approximately $5,000.00 provided by Parker. He also asserted the defenses of setoff, contribution, and recoupment.

After hearing evidence, the Chancery Court entered a Memorandum Opinion and Order, providing Lambert an opportunity to pay Parker a sum for her half of the equity in the property, and if the parties could not agree on such a sum, the Court would order the property sold and the proceeds divided equally between the parties, after Parker's reasonable attorney's fees were deducted from the net-sale proceeds. Lambert has appealed.

Parker and Lambert became romantically involved in 1992, and in December of that year, Parker moved into Lambert's home on Hale Road in Hamilton County, Tennessee (the "Hale Road Residence"). The Parties eventually decided they needed more space than the Hale Road Residence could provide, and Lambert found an unimproved tract of land on Birchwood Pike in Hamilton County (the "Property"), which he purchased in August of 1994 using $13,000.00 of his own assets. The initial warranty deed to the Property from the sellers was placed in Lambert's name alone, but on April 14, 1995, Lambert signed a Quitclaim Deed to Parker conveying a "One–Half (½) Undivided Interest in and to" the Property. On the same day, the parties signed a Deed of Trust and transferred title to the property to a trustee to secure the repayment of a

$75,000.00 construction loan from Northwest Georgia Bank. The Deed of Trust lists both Lambert and Parker as borrowers. In addition to the proceeds from the loan, Lambert testified he spent $5,000.00 of his own assets on construction of the home.

The Parties undertook construction of a home on the Property (the "Home") in May of 1995, and there is a dispute between them as to who did most of the work as general contractor. Lambert claims that he did 95 percent of the decision-making, and he also claims that Parker made a number of mistakes that caused extra expenses and delays. He admitted, however, that Parker managed the paper work and bookkeeping for the construction project. Parker claims that she was "the contractor" and hired the subcontractors and supervised their everyday work. She produced a copy of the building permit which shows her as the permit applicant. The evidence establishes that most of the checks drawn from the construction account to pay subcontractors were written by Parker. Parker was able to use her connections in the building industry to reduce the cost of construction by at least 15 percent.

The construction was completed in November 1995, and the parties moved into the Home at that time. On December 29, 1995, Lambert obtained permanent financing in his name alone with a disbursement date of January 4, 1996. The loan proceeds were used to paid off the construction loan. Repayment of the permanent loan was secured by a Deed of Trust on the Property, which was signed by Lambert on December 29, 1995. On January 4, 1996, Parker executed a Quitclaim Deed conveying all of her rights in the Property to Lambert so that he could secure the best financing available on the permanent loan. The Quitclaim Deed was recorded before the Deed of Trust, and on January 9, 1996, Lambert signed another Quitclaim Deed, conveying the Property to himself and Parker as "joint tenants with right of survivorship for and during their joint natural lives, with the remainder over upon the death of either of them to the survivor of them . . . ." This Deed was recorded on January 10, 1996.

The parties' relationship ended in December 2002, when Parker voluntarily moved out of the Home and into an apartment. In November 2003, she attempted to move back into the Home, but Lambert refused to allow her to return.

Our review on appeal is *de novo* based upon the record of the proceedings. *Keaton v. Hancock County Bd. of Educ.*, 119 S.W.3d 218, 222 (Tenn.Ct.App.2003). The Court presumes the Trial Court's findings of fact are correct, unless the evidence preponderates to the contrary. Tenn. R.App. P. 13(d); *Walker v. Moore*, 745 S.W.2d 292 (Tenn.Ct.App.1987). This presumption, however, does not apply to the Trial Court's conclusions of law. *Keaton*, 119 S.W.3d at 222.

The record before us establishes that the Judgment appealed from is not a final judgment under the meaning of Tenn. R.App. P. 3(a). *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003).

The Chancery Court's Memorandum Opinion concluded that the Property should be sold and the proceeds divided equally. The Judgment also provided:

3. That, unless the parties agree to an amount of money to be paid to Ms. Parker within thirty (30) days from the entry of this Order, then Mr. Lambert and Ms. Parker shall list the real estate to be sold by a realtor of, and at a price of, their agreement or the parties shall advise the court of their inability to agree and the court will order the real

estate to be appraised and will select a realtor to sell the property at the appraised price;

4. Counsel for Ms. Parker shall be entitled to recover reasonable attorney fees from the sales proceeds *if* the real estate is listed for sale and sold, pursuant to T.C.A. § 29–27–121, and the net sales proceeds from the sale of the house shall be deposited with the Clerk & Master until the attorney fee issue is resolved;

The Order left to a future date the calculation of Parker's attorney's fees. In addition, the Order opened the possibility that the Court would have to supervise the sale of the Property, if the parties could not agree on a sales price or realtor, and such sale would require the Court's confirmation. Tenn.Code Ann. § 29–27–216 (2005); *also see, Vineyard v. Vineyard,* 26 Tenn.App. 232, 170 S.W.2d 917, 920 (1943).

Tennessee Rules of Appellate Procedure, Rule 2, allows us to suspend Rule 3(a). *Bayberry Assocs. v. Jones,* 783 S.W.2d 553, 559 (Tenn.1990). The issues which have already been adjudicated by the Chancery Court are unlikely to be pretermitted by future events. Rather than delaying the inevitable need to address these issues, judicial economy is best served by addressing the issues on their merits in this appeal. In the interest of expediting a decision on these issues, good cause exists to suspend the application of Rule 3(a) pursuant to Rule 2. *See Rector v. Halliburton,* No. M1999–02802–COA–R3–CV, 2003 WL 535924, at *3 (Tenn.Ct.App. Feb.26, 2003). Accordingly, we suspend the application of Rule 3(a) in this case.

■ The first issue on appeal is whether the Trial Court erred in holding that the proceeds from the sale of the Property should be equally divided between the parties? Where jointly held property is sold, the sale proceeds are to be divided between the parties in accordance with their rights as determined by the court. Tenn. Code. Ann. § 29–27–217 (2005); *see also* Tenn.Code. Ann. § 29–27–113 (2005). "[T]he Court has a statutory and inherent right to adjust the equities and settle all claims between or among the parties...." *Yates v. Yates,* 571 S.W.2d 293, 296 (Tenn. 1978).

The Court did not award Lambert any compensation for his contributions to the preservation, maintenance, and improvements to the Property.[1] The Trial Court relied on the legal principles in *Rivkin v. Postal,* No. M1999-01947-COA-R3CV, 2001 WL 1077952 (Tenn.Ct.App. Sept. 14, 2001). In *Rivkin,* Rivkin had purchased the real estate and then quitclaimed a one-half interest to Postal. Rivkin also paid most of the mortgage payments, and the Court of Appeals affirmed the equal division of the property between the unmarried couple.

The Trial Court relied on *Rivkin,* for the proposition that the partition-sale proceeds could be divided equally despite the fact that one cotenant had carried a disproportionate share of the financial burden in preserving the property. The persuasiveness of this proposition, however, is diminished by the fact that Rivkin did not assert a claim for contribution from Postal. *Id.* at *10–11.

■ This proposition is also contrary to well settled principles governing when one

---

1. The expenditures for which Lambert seeks compensation can be divided into three categories: (1) the purchase price for the Property, (2) construction expenditures paid for using Mr. Lambert's personal assets rather than the construction loan account, and (3) payments toward the mortgage, property taxes, and homeowner's insurance.

cotenant is entitled to compensation from another cotenant.[2] The common theme of these principles is that a cotenant must equally share both the burdens of land ownership (i.e., the responsibility of preserving the land) as well as the benefits of the land ownership. If one cotenant bears a disproportionate share of the burden, the other cotenants must provide compensation. Alternatively, if one cotenant enjoys a disproportionate share of the benefits, the other cotenants must be compensated. Accordingly, Lambert is entitled to be compensated from Parker's share of the sales' proceeds sufficient to equalize his burden with hers.

2. The are five primary principles governing compensation in the partition context. First, the courts will compensate a cotenant who improved the jointly owned property as long as the improvements enhanced the property's value. *Broyles v. Waddel*, 58 Tenn. 32, 1872 WL 3987, at *4–5 (Tenn.1872); *Butler v. Butler*, No. 86–60–II, 1986 WL 8593, at *2 (Tenn. Ct.App. Aug.6, 1986). Generally, the amount of this compensation cannot exceed the amount by which the improvements enhanced the land's value. *Wilburn v. Kingsley*, 3 Tenn. App. 88, 1926 WL 2026, at *10 (Tenn.Ct.App. 1926). Second, cotenants must equally contribute to satisfying encumbrances on the property. *Tisdale v. Tisdale*, 34 Tenn. 596, 1855 WL 2382, at *2–3 (Tenn.1855); *Butler*, 1986 WL 8593, at *2. Third, cotenants must also equally contribute to expenses for necessary repairs and maintenance of the jointly owned property. *Broyles*, 58 Tenn. 32, 1872 WL 3987, at *4; *Butler*, 1986 WL 8593, at *2. However, "a cotenant is not entitled to credit for the value of personal services in managing and caring for the property," unless the cotenants have an agreement to the contrary. *Bunch v. Bunch*, No. 02A01–9705–CH–00106, 1998 WL 46217, at *4 (Tenn.Ct.App. Jan.8, 1998). Fourth, a cotenant with sole possession of the property is liable to other cotenants for any profits received in excess of his or her pro rata share. *Omohundro v. Elkins*, 109 Tenn. 711, 71 S.W. 590, 591 (1902); *Bunch*, 1998 WL 46217, at *4. Fifth, a cotenant with sole possession of the property who has excluded his or her cotenants from the property or who has denied their title to any part of the property, must pay rent to the cotenants for the use and occupation of the property regardless of the profits received. *Johnson v. Covington*, 148 Tenn. 47, 251 S.W. 893, 898 (1923); *Butler*, 1986 WL 8593, at *2.

■ Lambert testified that he spent $5,000.00 of his own assets on the construction of the Home, and these funds were the net proceeds generated from the sale of Lambert's Hale Road Residence in October of 1995. These funds were apparently spent between October and November of 1995 and during the parties' relationship as cotenants.[3] The expenditure of these funds contributed to the improvement of the Property, and Lambert is entitled to claim an equitable allowance from Parker's sale proceeds for these expenditures. *Broyles v. Waddel*, 58 Tenn. 32, 1872 WL 3987, at *4–5 (Tenn.1872); *Butler v. Butler*, No. 86–60–II, 1986 WL 8593, at *2 (Tenn.Ct.App. Aug.6, 1986).

3. For purposes of determining the equities between the Parties, their cotenancy relationship is deemed to have existed since April 14, 1995, when Mr. Lambert conveyed a "One–Half (1/2) Undivided Interest in and to" the Property to Ms. Parker. (Exhibit 2). Although Ms. Parker did convey all of her interests in the Property to Mr. Lambert on January 4, 1996, this conveyance was never intended to end the Parties' relationship as co-owners. Rather, the conveyance was only an act of chicanery intended to secure the best possible financing on the permanent loan. (R. Vol.II, pp. 37, 100); (Exhibit 5). Just four days after Ms. Parker's Quitclaim Deed and the Deed of Trust securing the permanent loan were recorded on January 5, 1996 (Exhibits 5 & 16), Mr. Lambert signed another Quitclaim Deed reconveying the Property to himself and Ms. Parker as "joint tenants with right of survivorship for and during their joint natural lives, with the remainder over upon the death of either of them to the survivor of them. . . ." (Exhibit 8). This Quitclaim Deed was recorded on January 10, 1996. (Exhibit 8). "Equity looks thru form to substance." *Lawman v. Barnett*, 180 Tenn. 546, 177 S.W.2d 121, 130 (1944).

In December 1995, Lambert obtained permanent financing, and there is no dispute that Lambert paid the resulting monthly mortgage obligations, since the permanent financing was obtained. The mortgage payments were applied against the underlying note, property taxes and insurance premiums via an escrow account. Lambert is also entitled to contribution for these expenditures from Parker's share of the proceeds. *Baxter v. Smith,* 211 Tenn. 347, 364 S.W.2d 936, 940 (1962); *Tisdale v. Tisdale,* 34 Tenn. 596, 1855 WL 2382, at *2–3 (Tenn.1855); *Butler,* 1986 WL 8593, at *2. The Record does not establish a precise calculation of Lambert's total payments toward the mortgage, taxes, and insurance, and no findings were made by the Trial Court regarding these expenses. The Trial Court concluded that since Lambert had exclusive possession of the Property from 2002, his right to contribution was barred. Although a cotenant is not allowed to exclude other cotenants from jointly-owned property, such behavior is not an absolute bar to a contribution claim. A cotenant who has excluded his or her cotenants from the property must pay rent to those cotenants for the use and occupation of the property. *Johnson v. Covington,* 148 Tenn. 47, 251 S.W. 893, 898 (1923); *Butler,* 1986 WL 8593, at *2. We conclude that Lambert's possession of the Property since 2002 does not bar his claims.

Lambert's exclusive possession of the Property, however, does provide Parker with an offsetting claim. When Lambert refused to allow Parker to reside in the property in 2003, he effectively ousted his cotenant. *Johnson v. Covington,* 251 S.W. at 898. Accordingly, Parker is entitled to the rental value of her interest in the property. The Trial Court made no finding regarding this rental value, and the Record does not include any estimates.

■ Parker presented evidence that from April 1995 until November of 2000 she used her own assets to pay for $14,640.66 in household expenses. She also testified she provided services such as cooking and cleaning, some of which the Trial Court allowed as a setoff. Lambert cites the rule in *Bunch v. Bunch,* No. 02A01–9705–CH–00106, 1998 WL 46217, at *4 (Tenn.Ct.App. Jan.8, 1998), that "absent an agreement, a cotenant is not entitled to credit for the value of personal services in managing and caring for the property." *Id.* at *4. He also argues that Parker's contributions to the household are not appropriate because they did not contribute to the preservation, maintenance, and improvement of the Property. Parker counters that the parties had an agreement that Lambert would pay the mortgage, taxes, and insurance and Parker would perform services and pay other expenses, which rendered *Bunch* inapplicable.

Assuming *arguendo* that there was such an agreement, cooking and cleaning are not the type of services contemplated by the court in *Bunch.* The services at issue in *Bunch* were those rendered by a cotenant as caretaker of an income-producing farm. Thus, those services were closely related to the maintenance of the land. These services and the consideration do not bear such a relationship to the land. A cotenant is entitled to compensation for expenses only if they are necessary for the repair and maintenance of the jointly owned property. *Broyles,* 58 Tenn. 32, 1872 WL 3987, at *4. The contributions to the household do not provide Parker with an offset against Lambert's claims, and the Trial Court's description of these contributions as an offset was improper.

■ Parker testified that she served as the general contractor, supervising construction of the parties' Home. Such services are the type of services contemplated

by the court in *Bunch* because they are directly related to improving the real estate. However, under *Bunch*, Parker is entitled to an offsetting right of compensation for these services only if the parties had an agreement to that effect. *Bunch*, 1998 WL 46217, at *4. Parker never testified that there was any such agreement, in fact, she testified they never discussed her role as contractor. Accordingly, she is not entitled to compensation for any services she may have provided in this regard.

The record establishes, however, that Parker made other contributions that would be offset against Lambert's right of contribution. She presented evidence that she provided payments totaling $7,000.00 to Lambert between April 1995 and September 2000, and that she intended Lambert to put those payments toward the mortgage payment or whatever else he needed. Lambert, in his Answer and testimony, conceded approximately $5,000.00 in this regard.

Lambert's mortgage payments establish a claim for contribution only to the extent he has paid more than his fair share of the common liability. *Baxter v. Smith*, 211 Tenn. 347, 364 S.W.2d 936, 940 (1962). Therefore, any payments made by Parker to Lambert for the purpose of paying down the mortgage, taxes, or insurance will be offset against Lambert's claims. The Trial Court made no findings regarding the amount that Parker paid toward these expenses.

Based on the foregoing, Lambert is entitled to contribution from Parker for her share of the mortgage payments and an allowance for his financial investment to improve the Property. Parker is entitled to an offsetting right to the rental value of her interest in the Property, from the time she no longer resided in the property, and is entitled to an offset for any amounts she contributed to the mortgage, taxes, or insurance. Accordingly, it is appropriate to remand this case to the Trial Court to establish the amounts the parties are entitled to receive from the sale. *See,* Tenn. Code Ann. § 27–3–128 (2005).

The final issue is whether the Trial Court erred in awarding attorney's fees only to Parker? Essentially Lambert argues the Court cannot award attorney's fees to Parker without also awarding them to him. Parker counters the Court acted within its discretion.

■ "The court may, in its discretion, order the fees of the attorneys for the complainant and defendant to be paid out of the common fund, where the property is sold for partition, and taxed as cost in cases where the property is partitioned in kind." Tenn.Code Ann. § 29–27–121 (2005) The Tennessee Supreme Court discussed this language as follows:

Since unambiguous statutes must be construed to mean what they say, there is no room for argument here. The statute authorizes the chancellor to make a judicial determination, in the first instance, whether or not fees for the attorneys of the parties shall be paid out of the common fund, where property is sold for taxation. Having made the determination that the common fund should bear the expense of fees, it is then the duty of the court to fix fees for the attorneys of both parties in accordance with those general principles judicially applied in the determination of reasonable attorneys fees. There is nothing in the statute to warrant paying the fees for counsel for one party from the common fund and cutting out counsel for another party. This can only be done where the services have been of no value to any party, having in mind the object of the suit and the parties' rights and interests therein. Due respect must be given the statute language which

speaks of fees for the 'attorneys for complainant and defendant'. If there had been any intention to vest an unlimited discretion in the court to exclude one party's counsel from payment from the common fund, the provision would have been in the alternative. The discretion awarded the court by the language of the statute is whether to pay any fees at all from the common fund, and the clear meaning of the language used is that once this determination has been made, then such fees as attorneys for complainant and defendant are entitled to receive must be paid from the common fund.

*Montgomery v. Hoskins*, 222 Tenn. 45, 432 S.W.2d 654, 655 (1968). Based upon the wording of the statute and the interpretation provided in *Montgomery*, the Trial Court had discretion to either award reasonable attorney's fees to both parties or not award attorney's fees at all. The Trial Court could award attorney's fees to Parker and deny them to Lambert only if it concluded the services provided by Lambert's counsel "have been of no value to any party, having in mind the object of the suit and the parties' rights and interests therein." *Id.* at 655. The Trial Court made no such finding, and without such a finding, the Court's award of attorney's fees to Parker alone was an abuse of discretion.

Finally, Parker argues that permitting an award of attorney's fees to Lambert would be beyond the scope of the pleadings because Lambert did not specifically request such relief. When a right to attorney's fees is provided by statute, Tennessee courts have relaxed the special pleading requirement. *Hardcastle v. Harris*, 170 S.W.3d 67, 90 (Tenn.Ct.App.2004). *Also see, Deas v. Deas*, 774 S.W.2d 167 (Tenn.1989). While it would have been better practice for Lambert to have specifically requested attorney's fees in his

Counter-complaint, the request for general relief was legally sufficient in this case.

The Judgment of the Trial Court is vacated, and upon remand, the Trial Judge is directed to establish the amount each party is entitled to, starting with the equal division of the property in accordance with this Opinion, and to, reconsider whether both parties are entitled to an award of attorney's fees.

The cost of the appeal is equally divided between the parties.