IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 3, 2021 Session

**SUZANNE R. VANCE v. SALLY ANN BLUE ET AL.**

**Appeal from the Chancery Court for Davidson County**
No. 18-772-IV        Russell T. Perkins, Chancellor

_____

**No. M2021-00064-COA-R3-CV**

_____

Co-owners sought partition of their real property. They agreed that the property, a single-family home, could not be partitioned in kind. But they disagreed on the appropriate remedy. One owner asked the court to order a public sale and divide the proceeds between the parties. The other owner sought permission to buy out her co-owner's interest. The court declined to order a sale. Instead, based on the equities, it directed one owner to buy out the other owner's interest at a fixed price. Because the court's decision contravened the partition statutes, we reverse in part, affirm in part, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed
in Part; Reversed in Part; and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT and CARMA DENNIS MCGEE, JJ., joined.

Roger A. Maness, Clarksville, Tennessee, for the appellant, Suzanne R. Vance.

Abby R. Rubenfeld, Nashville, Tennessee, for the appellee, Sally Ann Blue.

**OPINION**

**I.**

**A.**

Sally Blue and Suzanne Vance were in a domestic partnership for about 15 years. For much of that time, they lived in a single-family residence at 107 South 12th Street in Nashville. They also owned and operated a Jimmy John's franchise.

Ms. Blue purchased the couple's home with her own funds. At her direction, the property was deeded to "Sally Ann Blue and Suzanne R. Vance, tenants in common with rights of survivorship." In 2010, the couple borrowed $180,000 from Regions Bank, secured by the residential property. They used the loan proceeds to renovate the franchise location and to pay off Ms. Vance's credit card debt.

By 2011, Ms. Vance, who is an alcoholic, was exhibiting increasingly erratic behavior. At times, she was violent. And Ms. Blue sought, and obtained, multiple orders of protection against her. Ms. Vance only occupied the property intermittently between 2011 and 2015. The relationship ended in 2015 after a particularly violent episode. Ms. Blue obtained a five-year order of protection. And Ms. Vance pleaded guilty to criminal charges. Shortly thereafter, Ms. Vance moved to Illinois.

In 2016, the estranged couple obtained a business line of credit, secured by a second mortgage on the residential property. Ms. Blue used the proceeds from the line of credit—totaling $79,500—to buy new equipment and to pay various business expenses.

On July 13, 2018, Ms. Vance filed this partition action. She alleged that the couple had separated and their jointly-owned real property was not suitable for partition in kind. She asked the court to sell the property and divide the proceeds. For her part, Ms. Blue sought compensation for paying more than her share of property expenses. She also raised the defenses of abandonment and unclean hands. In her counterclaim for partition, Ms. Blue agreed that partition in kind was "not practicable or advisable." But in lieu of a public sale, she asked the court for the opportunity to purchase Ms. Vance's interest in the property.

B.

At the outset of trial, the parties stipulated to several key facts. Ms. Blue purchased the property in 2005. But it was titled to both parties as tenants in common with right of survivorship. Partition in kind of the single-family home was "not possible." There were two deeds of trust encumbering the property. Since 2015, Ms. Blue had been in sole possession of the property.

According to Ms. Blue, she never intended to give Ms. Vance an ownership interest in the property. She added Ms. Vance to the title so that she would have a home if Ms. Blue died. Still, Ms. Blue conceded that in 2014 she swore in court documents that Ms. Vance had a 50% interest in the property as a co-tenant with right of survivorship.

Ms. Blue complained that Ms. Vance contributed nothing toward the purchase or maintenance of the property. Ms. Blue paid all property taxes, insurance premiums, and

2

mortgage payments for the property. And while Ms. Vance may have paid for some repairs, Ms. Blue paid the vast majority of those costs as well.

Ms. Blue made one thing clear; she wanted to keep the property. In her opinion, it was worth about $435,000. And she was willing to be responsible for the remaining mortgage debt. She believed that Ms. Vance had forfeited her interest in the property through her violent behavior and her failure to pay any property expenses.

Ms. Vance failed to come forward with any contrary evidence. She agreed that Ms. Blue paid all the mortgage payments. Yet she insisted that the payments were made from a business account. Otherwise, she either could not recall or did not know who paid specific property expenses.

## C.

The court ruled that both parties had "an interest as tenants in common with right of survivorship in the subject real property." Despite Ms. Blue's protests, the court found evidence that she had given Ms. Vance an ownership interest in the property. But even if "the deed to the property d[id] not, for some reason, constitute a gift," the clear language of the warranty deed established Ms. Vance's ownership interest.

Either way, the court reasoned that "this gift . . . [wa]s subject to the financial obligations imposed on co-tenants and prevailing concepts of fundamental fairness and equity in the partition context." Ms. Blue proved that she paid "all of the property taxes, interest, and maintenance, as well as for any improvements on the property." She also paid all of the mortgage payments. And Ms. Vance paid nothing.[1]

In the court's view, "it would be inequitable" to order the property sold "under the unique circumstances of this case." Because Ms. Blue "paid for everything" and was forced to seek protective orders due to Ms. Vance's violent behavior, the court determined that she should be allowed to purchase Ms. Vance's interest in the property for $21,750, or roughly 5% of the property's gross fair market value.[2]

The court directed that the property be partitioned "by means of [Ms. Blue] buying out [Ms. Vance's] . . . ownership interest in the . . . real property by paying [Ms. Vance]

_____

[1] The court found insufficient proof to support Ms. Vance's claim that she had been excluded from the property. Nor did Ms. Blue prove that Ms. Vance had abandoned the property. Under these circumstances, the court determined that it would be unfair to require Ms. Blue to pay Ms. Vance rent for the time she was in sole possession of the property.

[2] The court's buyout figure was based, at least in part, on its finding that Ms. Blue was entitled to "substantial" compensation for shouldering the financial burdens of property ownership.

3

the sum of $21,750." It required Ms. Blue to pay the remaining mortgage debt. It also awarded Ms. Blue a monetary judgment as a sanction for Ms. Vance's repeated failure to appear at a deposition.

## II.

On appeal, Ms. Vance complains that the trial court erred in denying a pre-trial motion for a telephonic deposition. She also challenges the court's decision to allow Ms. Blue to purchase her ownership interest in the real property at a fixed price.

### A.

Ms. Vance's first issue stems from her efforts to avoid being deposed in Tennessee. Her efforts were due, in part, to certain unresolved "legal matters in Davidson County."[3] She resisted Ms. Blue's attempts to schedule a deposition by agreement, resulting in Ms. Blue asking the court to require Ms. Vance to appear for a deposition. In response, Ms. Vance moved that her deposition be conducted by telephone. *See* TENN. R. CIV. P. 30.02(7) (authorizing a court upon motion to "order that a deposition be taken by telephone"). The court denied Ms. Vance's request.

Pre-trial discovery decisions "rest within the sound discretion of the trial court." *Benton v. Snyder*, 825 S.W.2d 409, 416 (Tenn. 1992). Our review of discretionary decisions is limited. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009). We do not "second-guess the court below" or "substitute [our] discretion for the lower court's." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

We discern no abuse of discretion in requiring Ms. Vance to appear in person for a deposition. She argues that she was required to incur unnecessary travel costs "to testify about matters . . . that were, in large part, the subject of written instruments" that were not in dispute. And the denial of her request "resulted in a flurry of motion filings and hearings" that increased costs unnecessarily. But the court applied the correct law, properly assessed the evidence, and came to a decision within the range of acceptable alternatives. *See id.*

### B.

For her second issue, Ms. Vance argues that the court's remedy was improper. By statute, a co-tenant may have jointly-held property partitioned in kind or sold for partition. Tenn. Code Ann. § 29-27-101 (2012). A co-tenant

---

[3] Ultimately, Ms. Vance "was able to resolve those other legal matters by coming to Tennessee and . . . by serving approximately 20 days in the Davidson County workhouse."

is equally entitled to have such premises sold for division, in the following cases:

(1) If the premises are so situated that partition thereof cannot be made; or
(2) Where the premises are of such description that it would be manifestly for the advantage of the parties that the same should be sold instead of partitioned.

*Id.* § 29-27-201 (2012). If one of the statutory criteria is met, "a sale is justified." *Glenn v. Gresham*, 602 S.W.2d 256, 258 (Tenn. Ct. App. 1980). The court determines an appropriate division of the proceeds from the sale. Tenn. Code Ann. § 29-27-217 (2012) ("The rights of the parties shall be settled by the judgment or decree of the court, and the proceeds divided in accordance therewith.").

Whether the facts established in the trial court "satisfy the statutory standard" is a mixed question of law and fact. *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982) (A mixed question of law and fact is a "question[ ] in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated."). "Cases that involve mixed questions of law and fact are subject to de novo review." *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

Here, the parties stipulated that the property could not be partitioned in kind. So "a sale is justified." *Glenn*, 602 S.W.2d at 258. Yet the court did not order the premises sold for division. Rather, it "adopted a price, . . . and allowed one party to buy the other party's interest for a court-specified amount." *Est. of Battle*, No. M2017-00227-COA-R3-CV, 2017 WL 4570494, at *3 (Tenn. Ct. App. Oct. 12, 2017). Ms. Blue insists that the court directed a type of private sale. But "[a] court-ordered divestiture of property interests at a court-determined price is not a sale as contemplated by Tennessee Code Annotated section 29-27-201." *Id.*

The court lacked authority to order Ms. Vance to sell her interest to Ms. Blue. *See Yates v. Yates*, 571 S.W.2d 293, 296 (Tenn. 1978); *Est. of Battle*, 2017 WL 4570494, at *3; *Pryor v. Smith*, No. 32, 1989 WL 119442, at *1-2 (Tenn. Ct. App. Oct. 13, 1989); *Walton v. Seawood*, No. 35, 1986 WL 14054, at *2-3 (Tenn. Ct. App. Dec. 11, 1986). As our supreme court has previously explained,

While the [c]ourt has a statutory and inherent right to adjust the equities and settle all claims between or among the parties, it has no power to divest title out of one tenant and vest it in another. The statutory adjustment must be made by an appropriate allocation of the net sales proceeds, to be reflected in the [c]ourt's decree on distribution.

5

*Yates*, 571 S.W.2d at 296. Once the statutory standard is satisfied, the court must order a sale of the premises. *Gober v. Burrus*, 726 S.W.2d 532, 534-35 (Tenn. Ct. App. 1986). Equitable considerations should factor into the court's division of the sales proceeds. *Broyles v. Waddel*, 58 Tenn. 32, 40-41 (1872). So we reverse the court's remedy of a forced buyout and remand for further proceedings consistent with the partition statutes.

Ms. Vance asks this Court to define the compensation to which Ms. Blue is entitled as a co-tenant. We decline do so. Because the trial court did not order a sale for partition, it did not determine an appropriate division of the sales proceeds. On remand, the court, without further proof, shall determine all rights and claims between the parties, partition the property by public sale, and make an appropriate allocation of the proceeds. Tenn. Code Ann. § 29-27-217. In so doing, the court should bear in mind the "five primary principles governing compensation in the partition context." *Parker v. Lambert*, 206 S.W.3d 1, 5 n.2 (Tenn. Ct. App. 2006). The court may also consider whether to award attorney's fees to the parties out of the common fund. Tenn. Code Ann. § 29-27-121 (2012); *Parker*, 206 S.W.3d at 7-8.

## III.

We affirm the court's decision to require an in-person deposition. We reverse the court's decision to partition the real property by means of a forced buyout. This case is remanded for further proceedings consistent with this opinion.

_____ s/ W. Neal McBrayer _____
W. NEAL McBRAYER, JUDGE
