# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 7, 2023 Session

## TAYLOR BROCATO (NOW DUNN) V. KYLE YOUNG

### Appeal from the Chancery Court for Montgomery County
No. MCCHCVRE21-28    Adrienne G. Fry, Judge

_____

### No. M2023-00222-COA-R3-CV

_____

This is a post-divorce partition action in which the ex-wife asked the trial court to order the sale of the former marital residence and to award her, as specified in the parties' marital dissolution agreement ("the MDA"), half of the equity resulting from the sale. The ex-wife relied on the provision in the MDA, which provides that she is entitled to fifty percent of any equity in the former marital residence "when the house sells." The ex-husband opposed the partition action, arguing that he was awarded the former marital residence pursuant to the MDA and that the ex-wife was only entitled to half of the equity valued as of the date of their divorce in 2019. The ex-husband also contended that the ex-wife's claims were barred under the doctrine of equitable estoppel because he had remitted $6,600.00 in monthly payments toward the ex-wife's equity pursuant to an oral agreement that set her equity interest at $9,750.00. The court granted the partition petition and ordered that the property be sold. The court also found that the MDA was a contract in contemplation of divorce; therefore, acting pursuant to Tennessee Code Annotated § 36-4-121(b)(2)(A) ("the Distribution of Marital Property Statute"), the court valued the ex-wife's equity in the former marital residence based on an appraisal near the date of the final divorce decree. The trial court refused to credit the ex-husband for the payments he made to the ex-wife according to their alleged oral agreement, finding that to do so would be a violation of the statute of frauds. Both parties appeal. For the reasons explained below, the judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Taylor R. Dahl and Taylor V. Hutson, Clarksville, Tennessee, for the appellant, Taylor Brocato (now Dunn).

Steven C. Girsky, Clarksville, Tennessee, for the appellee, Kyle Young.

## MEMORANDUM OPINION[1]

Taylor Brocato (now Dunn) ("Wife") and Kyle Young ("Husband") were divorced by entry of final decree of divorce ("final decree") in the Circuit Court for Montgomery County on August 16, 2019, which incorporated a Marital Dissolution Agreement ("MDA") dated June 7, 2019. Both parties were pro se throughout the divorce proceedings, and they crafted the MDA without the assistance of counsel, using a boilerplate form that they obtained from a source not revealed in this record.

The MDA addressed issues relating to the parties' marital residence along with their debts and other assets. The provision regarding their marital residence reads as follows:

> The following real estate owned by one or both or the parties is located at 801 Alton Drive in Clarksville, Tennessee 37043. . . . Upon the entry of the Final Decree, the real estate shall be vested solely in the ☐wife ☐husband, and the other spouse will thereby be divested of all right, title and interest in it. They are satisfied that a fair division has been made of it.

When the parties executed the MDA, they failed to check either box to indicate to whom the property would be awarded after the divorce. Nevertheless, the MDA indicates that "when the house sells," Wife shall receive "half of what is made." More specifically, the provision reads: "the husband shall pay for the debt set forth below: $1,000 for a credit card, and when the house sells, half of what is made."

On the day of their divorce, both parties appeared pro se before the Honorable Kathryn W. Olita, Judge of the Circuit Court for Montgomery County, at which time the court asked for clarification as to the division of the equity in the marital residence. Wife testified, "[Husband] is going to just pay me equity. We've agreed on that." The court then inquired about the ownership of the house, and asked Wife, "So- - so it's going to be the husband's property?" Wife replied, "Yes, Your Honor." The court then—sua sponte—checked the box next to "husband" in the MDA provision regarding the marital residence. However, the court admonished both parties, informing them that they would maintain an

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee states as follows:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

equal interest in the former marital residence until a deed was prepared. Specifically, Judge Olita stated as follows:

> [W]hat I'm signing today . . . has no effect on the transfer of that piece of property solely into your name. You will need to hire an attorney probably to help you with the preparation of a deed. . . . Until that happens Kyle, she is still an owner of the house. . . . [U]ntil you get that deed done, she still has a right to it. And this Order that I'm signing doesn't do that for you. . . . [T]hat's something you'll have to do separately. I just want to make sure, on the record today, that you all understand that.

The final decree was then approved by Judge Olita and entered on August 16, 2019, after which Husband took no action to "get that deed done."[2]

Two years later, in September of 2021, Wife commenced this action in Chancery Court by filing a petition for division or partition of real property, asserting that she and Husband owned the former marital residence as cotenants, that it should be sold, and that she was entitled to fifty percent of any equity in the property when it was sold. More specifically, she asserted that, according to the MDA, her equity interest in the property was to be determined "when the house sells."

Husband filed an answer opposing the sale of the property. He contended that the MDA expressly provided that the property would become his as of the date of the divorce, and that the parties had orally agreed that Wife's one-half interest in the property would be valued at $9,750.00. Moreover, Husband noted that Wife had already accepted $6,600.00 from him toward her equity in the property pursuant to the parties' oral agreement. [3] Thus, he contended that the doctrine of equitable estoppel precluded Wife's claims.

The partition petition came on for hearing on November 28, 2022, during which both parties testified and the court heard arguments from counsel. Pursuant to an order entered on December 15, 2022, the court granted the petition for sale, ruling that, because the former marital residence was a single-family home on an individual lot, it was not suitable for partition. Therefore, the court ordered that it be sold pursuant to Tennessee Code Annotated § 29-27-201. The court also found that the MDA was a contract in contemplation of divorce which had been incorporated into the final decree; therefore, under the Distribution of Marital Property Statute, the value of the former marital residence should be determined as near as possible to the date of the final decree.

---

[2] Husband testified at the partition hearing that a deed had not been prepared since the divorce.

[3] Wife accepted twenty-two consecutive monthly payments of $300.00 from Husband beginning in September 2019 and ending upon the filing of this partition action in July 2021.

To determine the value of the home at this time, the court relied on an appraisal done on September 1, 2019, two weeks after the divorce, as there was no testimony as to the value of the property on the exact date of the divorce. This 2019 appraisal valued the property at $220,000.00. The court also found that the mortgage owed on the home as near in time to the divorce was $185,404.90, and found the equity in the home at that time to be $34,595.10. Thus, the court found Wife's one-half of the equity to be $17,297.55 and ordered that she receive that amount from the sale of the property.

The court refused to credit Husband's $6,600.00 payments to Wife toward Wife's one-half of the equity in the former marital residence, stating that to do so would be a violation of the statute of frauds under Tennessee Code Annotated § 29-2-101(a)(4).

Husband requested that the court allow him to refinance the home and directly pay Wife the court-ordered amount of equity from the refinance proceeds. Wife objected to this request, instead requesting that the property be sold and that Husband pay her from the sale proceeds. The court ordered both of the parties to brief the issue of whether the court should permit refinance or force the sale of the former marital residence.

Pursuant to two orders that followed, one entered on January 17, 2023, and the other entered on February 16, 2023, the court ordered the property to be sold and proceeds from the sale to be used to compensate Wife for her equity share valued at $17,297.55. The property was sold shortly thereafter.[4]

This appeal followed.

## ISSUES

On appeal, Wife raises two issues, and Husband raises four issues, which we consolidate and restate as follows:

1. Whether the trial court erred in valuing Wife's interest in the former marital residence as of the date of the divorce as contemplated by the Distribution of Marital Property Statute.

2. Whether the trial court erred in refusing to give Husband credit for the monthly payments he remitted to Wife totaling $6,600.00.

3. Whether the trial court erred in failing to credit Husband for his contributions to preserve and maintain the marital property.

---

[4] The property was sold on April 14, 2023, for $335,000.00. The net proceeds from the sale, after payment of all costs and encumbrances, were $132,505.95. Wife claims half of this amount as her equity.

4. Whether Wife was entitled to receive rent payments from Husband from the date of the divorce until the property was sold because Husband refused to allow her access to the property.

5. Whether either party should be awarded attorney's fees.

## STANDARD OF REVIEW

This court reviews findings of fact made by a trial court sitting without a jury under a de novo standard with a presumption of correctness for those findings. Tenn. R. App. P. 13(d). The trial court's conclusions of law, however, are accorded no such presumption. *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006) (citing *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993)).

## ANALYSIS

### I.    WIFE'S EQUITY IN THE FORMER MARITAL PROPERTY

Wife contends that the trial court erred in valuing her half of the equity in the home as of the date of the parties' divorce in 2019 pursuant to the Distribution of Marital Property Statute. She contends that this was error because the MDA expressly provides that she was entitled to fifty percent of any equity in the marital residence "when the house sells," which did not occur until 2023. We agree.

As stated above, the MDA states that "when the house sells" Husband shall pay Wife "half of what is made." However, when the trial court granted Wife's petition for sale, the court did not rely on the MDA, rather, the court relied on the Distribution of Marital Property Statute and applied the provision which states that "[a]ll marital property shall be valued as of a date as near as possible to the date of entry of the order finally dividing the marital property." Tenn. Code Ann. § 36-4-121(b)(2)(A).

"Where parties contract as to rights and obligations in a marriage dissolution agreement, and that agreement is incorporated into the judgment of divorce, courts should construe the MDA like 'other contracts [with respect to] its interpretation, its meaning and effect.'" *Briceno v. Briceno*, No. M2006-01927-COA-R3-CV, 2007 WL 4146280, at *5 (Tenn. Ct. App. Nov. 21, 2007) (quoting *Bogan v. Bogan*, 60 S.W.3d 721, 730 (Tenn. 2001)) (citation omitted).

Our interpretation of contracts is a question of law which we review de novo. *Karsonovich v. Kempe*, No. M2017-01052-COA-R3-CV, 2018 WL 1091735, at *3 (Tenn. Ct. App. Feb. 27, 2018) (citing *Buettner v. Buettner*, 183 S.W.3d 354, 358 (Tenn. Ct. App. 2005)). In *Bailey v. Bailey*, No. E2013-02195-COA-R3-CV, 2014 WL 3536964 (Tenn. Ct.

App. July 17, 2014), this court succinctly outlined the general rules and principles guiding the construction of contracts, stating as follows:

> The cardinal rule in the construction of contracts is to ascertain the intent of the parties. *Bradson Mercantile, Inc. v. Crabtree*, 1 S.W.3d 648, 652 (Tenn. Ct. App. 1999) (citing *West v. Laminite Plastics Mfg. Co.*, 674 S.W.2d 310 (Tenn. Ct. App. 1984)). If the contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms. *Id.* (citing *Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355 (1955)). The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. *Id.* (citing *Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.*, 521 S.W.2d 578 (Tenn. 1975)). In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. Id. (citing *Ballard v. North American Life & Cas. Co.*, 667 S.W.2d 79 (Tenn. Ct. App. 1983)). ***If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. Id. (citing Sutton v. First Nat. Bank of Crossville, 620 S.W.2d 526 (Tenn. Ct. App. 1981)). Courts cannot make contracts for parties but can only enforce the contract which the parties themselves have made. Id. (citing McKee v. Continental Ins. Co., 191 Tenn. 413, 234 S. W.2d 830 (1950)).***

*Id.* at 2–3 (quoting *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561–62 (Tenn. Ct. App. 2003) (emphasis in original) (citation omitted). A contract's language "is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Ramsey v. Reso*, No. E2017-01305-COA-R3-CV, 2018 WL 1747991, at *3 (Tenn. Ct. App. Apr. 11, 2018) (citing *Farmers Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975)).

We note that, as a result of the parties' self-drafting of a form document they obtained from an unknown source, the MDA is not a model of clarity. As the trial court noted, "When parties are pro se, it can be a minefield." Nevertheless, we find that the provision in the MDA which states "[w]hen the house sells, half of what is made" is unambiguous and clearly indicates that Wife is entitled to half of the equity resulting from the sale of the property, meaning when it is sold. If the parties had intended for Wife to receive the value of the property as of the date of the divorce, they could have included this language in the MDA. *See Id.* at *2 (citing *Cookeville PC v. Southeastern Data Sys.*, 884 S.W.2d 458, 461–62 (Tenn. Ct. App. 1994)) ("When entering into an MDA, the parties choose what language to include in order to illustrate how they intend for their property to be distributed. Accordingly, courts utilize the language of the MDA to determine each party's respective rights.").

Here, there appear to be two inconsistent provisions in the MDA.[5] Thus, to the extent that the contract is ambiguous, we find the colloquy between the judge presiding over the divorce action and the parties instructive. As Judge Olita stated in open court while explaining the parties' rights to the former marital residence during the divorce hearing:

> [W]hat I'm signing today . . . has no effect on the transfer of that piece of property solely into your name. You will need to hire an attorney probably to help you with the preparation of a deed. . . . *Until that happens Kyle, she is still an owner of the house. . . . [U]ntil you get that deed done, she still has a right to it. And this Order that I'm signing doesn't do that for you. . . . [T]hat's something you'll have to do separately. I just want to make sure, on the record today, that you all understand that.*

(Emphasis added). Both parties responded, indicating that they understood and agreed with the above statements. Thus, the parties knew that the former marital residence would not become Husband's sole property unless and until the appropriate deed was executed and the property was conveyed to Husband. However, that never occurred. Instead, title remained in both parties until the property was sold in 2023 pursuant to the court order in the partition action, at which time Wife was entitled to "half of what [was] made," as is expressly stated in the MDA.

In a partition, "[w]here jointly held property is sold, the sale proceeds are to be divided between the parties in accordance with their rights as determined by the court." *Parker v. Lambert*, 206 S.W.3d 1, 4 (Tenn. Ct. App. 2006) (citing Tenn. Code. Ann. § 29-27-217 (2005)); *see also* Tenn. Code. Ann. § 29-27-113. And as this court explained in *Roberts v. Roberts*, No. M2010-01616-COA-R9-CV, 2011 WL 1486629 (Tenn. Ct. App. Apr. 19, 2011), the court in a partition action arising from a prior divorce proceeding should look to the parties' marital dissolution agreement to determine the parties' interests in the property to be partitioned, then apply the partition statute to partition the property. *See Id.* at *3 ("[I]n this case, the source of the plaintiffs' claim to an interest in the real property is the terms of the MDA incorporated in the divorce decree[.]").

Accordingly, based on the unique facts of this case, the trial court's decision concerning the value of Wife's equity in the former marital residence is reversed, and this matter is remanded for the court to determine the amount of Wife's equity in the former marital residence based on "half of what [was] made" when the former marital residence was sold in 2023. Provided, however, and as discussed in detail below, the court shall additionally adjust the equities and settle all claims between the parties before making an award. *See Parker*, 206 S.W.3d at 4 (quoting *Yates v. Yates*, 571 S.W.2d 293, 296 (Tenn.

---

[5] The provision in the MDA that states "when the house sells" Wife will receive "half of what is made" appears to be in conflict with the provision that states, "Upon the entry of the Final Decree, the real estate shall be vested solely in the Husband, and the other spouse will thereby be divested of all right, title and interest in it."

1978)) ("[T]he Court has a statutory and inherent right to adjust the equities and settle all claims between or among the parties.").

## II.    THE ORAL AGREEMENT

The foregoing notwithstanding, Husband claims that the trial court erred in refusing to enforce an oral agreement between Wife and himself wherein Wife agreed to accept monthly payments of $300.00 to compensate her for her equity in the former marital residence, which they had allegedly agreed was $9,750.00. Specifically, Husband submits that Wife

> made another agreement orally with [Husband] to accept payments as he decided not to sell right away. . . . This testimony shows the clear intent of [Wife] to release all claims and rights that she had to retain any additional equity in the property beyond August 16, 2019.

As noted earlier, the trial court refused to credit Husband's $6,600.00 payments to Wife toward Wife's one-half of the equity in the former marital residence, stating that "[t]o do so would be a violation of the Statute of Frauds, Tenn. Code Ann. §29-2-101(a)(4)."

Tennessee's general statute of frauds provides:

> [N]o action shall be brought "Upon any contract for the sale of lands" unless "the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party."

*Robert C. Pelt et al. v. Richard E. Benjamin et al.*, No. M2020-01068-COA-R3-CV, 2021 WL 4621268, at *4 (Tenn. Ct. App. Oct. 7, 2021) (quoting Tenn. Code Ann. § 29-2-101(a)(4)). Tennessee requires strict enforcement of the statute of frauds in regard to real property. *Logan v. Est. of Cannon*, No. E2015-02254-COA-R3-CV, 2016 WL 5344526, at *8 (Tenn. Ct. App. Sept. 23, 2016) (citations omitted). The goal of this statute is to protect landowners from fraud, misunderstanding, and inconsiderate agreements. *In re Fowler*, 201 B.R. 771, 776 (Bankr. E.D. Tenn. 1996) (citing *Bailey v. Henry*, 143 S.W. 1124, 1127 (Tenn. 1912)).

Here, the parties' alleged oral agreement involves interests in real property. Thus, it is subject to the statute of frauds. While the doctrine of partial performance may prevent the applicability of the statute of frauds in certain circumstances, *see Trew v. Ogle*, 767 S.W.2d 662, 664 (Tenn. Ct. App. 1988), it is well established in Tennessee that partial performance will not create an exception to the statute of frauds if the subject matter of the

agreement involves interests in real estate. *Smith v. Hi-Speed, Inc.*, 536 S.W.3d 458, 477 (Tenn. Ct. App. 2016) (citations omitted). Although "[t]he harshness of this rule has been mitigated by the application of the doctrine of equitable estoppel in exceptional cases," we do not find that enforcing the statute of frauds in this case "would make it an instrument of hardship and oppression, verging on actual fraud." *Baliles v. Cities Serv. Co.*, 578 S.W.2d 621, 624 (Tenn. 1979) (citations omitted).

Because the parties' alleged oral agreement is unenforceable under the statute of frauds, we affirm the trial court's ruling to the extent that the parties did not have an enforceable agreement setting Wife's equity in the property at $9,750.00. Nevertheless, for the reasons discussed in more detail below, we hold that Husband is entitled to a credit in the amount of $6,600.00 for the twenty-two monthly payments of $300 each Wife received and accepted. Allowing Wife to retain these proceeds without crediting Husband would constitute an unjust enrichment in favor of Wife. *See Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (quoting *Paschall's Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966)) ("The elements of an unjust enrichment claim are: 1) '[a] benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'"); *see also Tarver v. Tarver*, No. W2017-01556-COA-R3-CV, 2019 WL 1200274, at *10 (Tenn. Ct. App. Mar. 13, 2019) (quoting *Brewer v. Brewer*, No. M2010-00768-COA-R3-CV, 2011 WL 532267, at *2 (Tenn. Ct. App. Feb. 14, 2011)) ("In a partition case, '[t]here is generally a presumption that joint tenants have equal interests, but a tenant who pays more than his or her share for the property *may* seek contribution to compensate him or her.'") (emphasis in original).

Accordingly, we remand this issue with instruction to afford Husband a credit in the amount of $6,600.00 toward his obligation to compensate Wife for her equity interest in the property.

### III.    COTENANT CONTRIBUTIONS AND RENT

Husband also argues that the trial court erred in failing to credit him for his contributions to the former marital residence from August 16, 2019, the date of the parties' divorce, to April 14, 2023, the date of the sale of the home. Specifically, Husband seeks compensation for improvements that he made to the former marital residence, as well as for his expenditures in maintaining and repairing the home. He also seeks contribution for payments that he made toward the mortgage, property taxes, and homeowner's insurance.

In this regard Husband relies on the principles set forth in *Parker v. Lambert* in which this court discussed the "well settled principles governing when one cotenant is entitled to compensation from another cotenant." *Parker*, 206 S.W.3d at 4. The court in

*Parker* described the five primary principles that a trial court should apply when equitably distributing proceeds from a partition sale as follows:

> First, the courts will compensate a cotenant who improved the jointly owned property as long as the improvements enhanced the property's value. *Broyles v. Waddel*, 58 Tenn. 32, 1872 WL 3987, at *4–5 (Tenn. 1872); *Butler v. Butler*, No. 86–60–II, 1986 WL 8593, at *2 (Tenn. Ct. App. Aug. 6, 1986). Generally, the amount of this compensation cannot exceed the amount by which the improvements enhanced the land's value. *Wilburn v. Kingsley*, 3 Tenn. App. 88, 1926 WL 2026, at *10 (Tenn. Ct. App. 1926). Second, cotenants must equally contribute to satisfying encumbrances on the property. *Tisdale v. Tisdale*, 34 Tenn. 596, 1855 WL 2382, at *2–3 (Tenn. 1855); *Butler*, 1986 WL 8593, at *2. Third, cotenants must also equally contribute to expenses for necessary repairs and maintenance of the jointly owned property. *Broyles*, 58 Tenn. 32, 1872 WL 3987, at *4; *Butler*, 1986 WL 8593, at *2. However, "a cotenant is not entitled to credit for the value of personal services in managing and caring for the property," unless the cotenants have an agreement to the contrary. *Bunch v. Bunch*, No. 02A01-9705-CH-00106, 1998 WL 46217, at *4 (Tenn. Ct. App. Jan. 8, 1998). Fourth, a cotenant with sole possession of the property is liable to other cotenants for any profits received in excess of his or her pro rata share. *Omohundro v. Elkins*, 109 Tenn. 711, 71 S.W. 590, 591 (1902); *Bunch*, 1998 WL 46217, at *4. Fifth, a cotenant with sole possession of the property who has excluded his or her cotenants from the property or who has denied their title to any part of the property, must pay rent to the cotenants for the use and occupation of the property regardless of the profits received. *Johnson v. Covington*, 148 Tenn. 47, 251 S.W. 893, 898 (1923); *Butler*, 1986 WL 8593, at *2.

*Id.* at 8 n.2.

For her part, Wife counters that Husband excluded her from the former marital residence after the parties' divorce, testifying that "[Husband] told me that I was not allowed to come on the property or else he would call the cops."[6] Thus, Wife claims that Husband must pay her rent for the period of time that she was excluded from the home while she was still a cotenant.

This court has also clarified that "[a]n ouster does not necessarily mean a physical expulsion of one party by another, but it requires the party claiming adversely to perform some act that makes it clear to his cotenant that she is being excluded from ownership."

---

[6] Husband did not dispute this testimony.

*Nesmith v. Alsup*, No. 01-A-01-9809-CH00509, 1999 WL 557620, at *4 (Tenn. Ct. App. Aug. 2, 1999). This court further noted that

> ouster and exclusion may be affected by taking possession and affording actual notice of a claim of sole ownership or other positive and unequivocal act that must by its nature put the other cotenants upon notice that they are excluded from the possession.

*Id.* (quoting *Drewery v. Nelms*, 177 S.W. 946 (Tenn. 1915)). Moreover, as stated above, a cotenant who has excluded his cotenants from the property must pay rent to those cotenants for the use and occupation of the property. *Parker*, S.W.3d at 6 (citing *Johnson v. Covington*, 251 S.W. 893, 898 (Tenn. 1923); *Butler*, 1986 WL 8593 at *2)).

Because the parties remained cotenants until the property was sold in 2023, we remand these issues to the trial court to afford the parties the opportunity to present relevant evidence and to be heard on their respective claims and defenses concerning the cotenant economic issues and to enter judgment accordingly.

## IV.    ATTORNEY'S FEES

Husband requests his reasonable attorney's fees incurred both at trial and on appeal under Tennessee Code Annotated § 29-27-121 ("the Partition Statute"). Although Wife does not oppose Husband's request for attorney's fees, she also requests her attorney's fees. *See Parker*, 206 S.W.3d at 8 (Finding that, pursuant to Tennessee Code Annotated § 29-27-12, a court in a partition action has discretion to award both parties attorney's fees or no attorney's fees).

Under the Partition Statute, "[t]he court may, in its discretion, order the fees of the attorneys for the complainant and defendant to be paid out of the common fund, where the property is sold for partition, and taxed as cost in cases where the property is partitioned in kind." Tenn. Code Ann. § 29-27-121. Based on our discretion, we deny both parties' requests for attorney's fees.

## IN CONCLUSION

The judgment of the trial court is reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion. Costs of appeal are assessed against both parties in equal share.

_____
FRANK G. CLEMENT JR., P.J., M.S.